## EX PARTE JOHN T. PARKER.

### No. 556.   *Decided February 2nd, 1895.*

**1.   Term of Court.—When It Ends.**

It is settled law in this State, that when a court is made by statute to begin on a certain Monday, and to continue in session for a certain number of weeks thereafter, such court ends and terminates at 12 o'clock m. on the Saturday night of the last week of the term; and, after that time, no acts can be done as of said term except such as are specially provided in articles 835 [795] and 836 [796] Code of Criminal Procedure.

**2.   Habeas Corpus.—Inquiry Under.—Extent of.—Burden of Proof.**

Where a writ of habeas corpus in effect attacks the validity of a judgment of court, it is competent, notwithstanding the recital in the judgment, to go behind the judgment and probe into the very truth of the matter as to whether an act done during the term was in fact done during the time recited by the record. But the burden of proof is upon the party impeaching the records, to do so by clear and convincing proof.

**3.   Time.—Sun Time and Standard Time.**

The only standard of time recognized by the courts, is the meridian of the sun; an arbitrary standard set up by persons in business will not be recognized. Where, at the beginning of a term of the court, the court house clock was, by order of the judge, set by a sun dial, and the sessions were thereafter held by the time indicated by such clock, the time of an adjournment of the term will be determined by the true sun-time, shown by the clock, and not by the standard time west of Greenwich.

#### ON REHEARING.

**4.   Judgment.—Recording Entry of, After Hour of Adjournment for the Term.**

Where the clerk proceeded, under direction of the court, to make the entry of the judgment as soon as the verdict was brought in and presented by the jury, and as soon as the motion for new trial was overruled and sentence pronounced. Held: That the Statute authorizes this to be done where an appeal is taken after the legal hour of adjournment on the last day of the term. C. C. P., Arts. 835 [795], 836 [796].

APPEAL from the District Court of Nueces. Tried below before Hon. J. C. RUSSELL.

The case is fully stated in the opinion.

*Marshall Rogers, Graves & Wilson* and *A. J. Parker*, for appellant.

1.   The court erred in holding that the adjournment of the court by limitation, at midnight, Saturday night, meant midnight by suntime, and not by standard time. The statute being silent as to the means of computing time, the custom and usage becomes the law upon that point. 6 Waite's Acts. and Defs., p. 635.

2.   The court erred in holding that relator was not entitled to be relieved from the effect of a judgment and sentence, where the evidence shows that the verdict, upon which the judgment was based, was received 46 minutes past 12 o'clock a. m. by standard time, on Sunday

morning after midnight of the day upon which the court expired by limitation, and thirty minutes by sun time. Acts 22 Leg., 42; Juneman v. State, 28 Texas Crim. App., 486; Harper v. State, 43 Texas Rep., 431.

3. The court erred in holding that the time, as indicated by the court house clock, should govern the time at which the court would expire by limitation, although the clock was behind some time. The time for the final adjournment is fixed by statute and means some definite and exact time; and when the exact time arrives, the court, without any action on his part, ceases to exist, and that regardless of the indications of the court clock.

4. The court erred in sustaining a judgment which was entered of record on Sunday after the term of the court had expired by limitation, and the sheriff had, by order of the court, adjourned the court *sine die* by proclamation. Art. 797 C. C. P., which authorizes the District Judge to sit for certain purposes, does not extend the authority of that judge beyond the purposes mentioned in said article, viz.: to enable the defendant to move for a new trial or arrest of judgment and prepare his cause for appeal. A judgment being, "the declaration of the court entered of record," does not become a judgment until entered of record. C. C. P., Arts. 791, 797; Madison v. State, 17 Texas Crim. App., 479; Smith v. State, 1 Texas Crim. App., 408. A valid and legal judgment cannot be entered on Sunday. Harper v. State, 43 Texas , 431; Baxter v. People, 3 Ill., 386; City of Parsons v. Lindsay, 41 Kan., 336; Reed v. State, 53 Ala., 402.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, Judge.—Tried below on a habeas corpus proceeding before Hon. J. C. Russell, Judge of the Twenty-eighth Judicial District.

The relator, John T. Parker, was convicted at the spring term, A. D. 1892, of the District Court of Nueces County, of murder of the first degree, and his punishment assessed at confinement in the penitentiary for life. Sentence was passed on him, and from the judgment and sentence he prosecuted an appeal to this court. The cause was tried at the Austin term, 1894, of this court, and the judgment of the lower court affirmed, 33 Tex. Crim. Rep., 111. On the 9th of April, 1894, the relator sued out a writ of habeas corpus, and the same was tried before the Honorable J. C. Russell, Judge of the Twenty-eighth District, on the 13th of April, and relator was remanded to the custody of the sheriff. The ground set up by the relator, and on which he claimed that he should be discharged from custody, was that when the jury which tried his cause came into court and returned their verdict the term of the court had expired, and his conviction was in consequence a nullity. The statute authorizing the holding of a term of the District Court in Nueces County made the term begin on the ninth Monday after the first Monday in February, and to continue for six weeks. In Harper v. State, 43 Tex., 431, and in Ex-parte Juneman,

28 Tex. Crim. App., 488, an act similar to the act fixing the term of court in Nueces County has been construed; and it may now be considered as settled law in this State that where a court is made by statute to begin on a certain Monday, and to continue in session for a certain number of weeks thereafter, such court ends and terminates at 12 o'clock M. on the Saturday night of the last week of the term. The only provision authorizing the extension of the term of the court beyond the term fixed by law is to be found in articles 795 and 796 of the Code of Criminal Procedure, and by those provisions we do not understand that the term itself is extended, but that these articles allow certain prescribed things to be done in the particular case, such as to hear a motion for a new trial or in arrest of judgment, and to prepare the cause for the Court of Appeals. It is clear that no acts can be done as of the term, except such as are provided in said articles, and the rule is the same in civil as in criminal cases. See Ewing v. Perry, 35 Tex., 777. The verdict of a jury in a criminal case can only be rendered by the jury and received by the court in open court, and during the term of the court, and, if rendered and received after the term of the court has expired, it is null and void, and no judgment of conviction can be based upon it. See Harper v. State, 43 Tex., 431, and Ex-parte Juneman, 28 Tex. Crim. App., 488, already cited.

The question presented for our consideration in this case is, was the verdict of the jury, which by its terms found the relator guilty of the murder charged against him, rendered during the term of the District Court for Nueces County? or, to speak more strictly to the point in issue, was the verdict rendered in said case before 12 o'clock on the night of the 14th of May, 1892, or was it rendered after that time? If it was received by the court before that hour, then the conviction must stand; if not, the verdict and sentence should be set aside and held for naught. The record in the original case upon which an appeal was prosecuted, and which is also in the record now before the court, recites in the judgment that the defendant, who is the relator in this case, was tried and convicted on the 14th of May, 1892, and in this respect it is different from the Juneman case; for in that case the record of conviction (the judgment of the court) showed that the verdict of conviction was on Sunday following the last Saturday of the term, which was in said case held to be the last day of the term. Notwithstanding the recitals in the judgment in this case, we hold that it is competent, under the writ of habeas corpus, to go behind the record, and probe into the very truth of the matter as to whether an act purporting to have been done during the term was in fact done during the time recited by the record. But, while the verity of the recitations in the judgment may be thus inquired into, we would observe that every presumption will be indulged in favor of the truth of the record, and the burden is upon one impeaching its correctness to do so by clear and convincing proof. The record shows that there is a controversy as to the character or kind of time which all govern in determining the expiration of the term of the court in

Nueces County; the relator contending that standard or mean sun time should govern, while the State insists that true sun time should control. The statement of facts furnishes a good deal of testimony on this question of time, and from one of the experts we learn that there is a difference between mean sun time and true sun time. True sun time is ascertained by the means of a dial; mean sun time is what is called "standard time." What is known as simple "standard time"—"central time"—is merely the solar time of the ninetieth meridian west of Greenwich. The difference between standard time and sun time is exactly the same over each meridian. What is called central time is used and extends between the ninetieth meridian running west to the one hundred fifth. There is a difference of 4 minutes for each degree between true sun time and standard or mean sun time. Corpus Christi is 97° 25' west of Greenwich, and 20 minutes and 40 seconds is the difference between the standard time of the ninetieth meridian and the meridian of Corpus Christi. The difference at Corpus Christi between standard time and true sun time is 20 minutes and 40 seconds; that is, Corpus Christi sun time is that much slower than standard time. It is also shown that a representative of the weather bureau at Corpus Christi is furnished standard time through the telegraph service, and by it trains are run and business generally conducted. Persons in Corpus Christi get their time and regulate their watches by it from the railroad agents and the representatives of the weather bureau. The record before us shows that the District Court of Nueces County was held at Corpus Christi, and was a six-weeks term; that the judge of said court at or near the beginning of said term had the court house clock set by a sun dial, which was provided and used for that purpose, and that such had been the custom of the judge for a number of years, said clock being used to regulate the sessions and business of the court. The sheriff set the clock, or had it set, by his reckoning, 36 minutes behind standard time. The District Judge set his watch by the court house clock, and the movements of the court were controlled from the beginning of the term by that time.

We are not advised that the precise question here presented has ever been before the courts of this State. But it would appear to be the rule in other courts, where the question has been considered, to adopt and recognize true sun time. We quote from the American and English Encyclopedia of Law (volume 26, p. 10) as follows: "The only standard of time recognized by the courts is the meridian of the sun, and an arbitrary standard set up by persons in business will not be recognized." Also in Henderson v. Reynolds, 84 Ga., 159, 10 S. E. 734, and Searles v. Averhoff, 28. Neb., 668, 44 N. W., 872. Certainly no reasonable objection can be urged against the recognition of true sun time as the correct time by which matters of this character, such as the meeting and adjournment of courts, should be regulated. In the present case, the court having recognized and adopted true sun time as the time by which this court was regulated and controlled, the question now before us is, was it after 12 o'clock on Saturday night, the 14th of May, 1892, by

true sun time, when the verdict was received by the court in the case against the relator? We think that the testimony fairly shows that the verdict was received by the court from 12 to 16 minutes before 12 o'clock, and that the sentence was pronounced on defendant from 5 to 10 minutes before 12 o'clock, on Saturday night, the 14th of May, 1892, by the court house clock.

The contention of the relator, however, is that the clock was wrong as to true sun time; that from the time it was set, some six weeks before, it had lost time, and some of the witnesses estimate that it had lost as much as four minutes per week. A number of witnesses also testified that they carried watches that were good timekeepers, and that they had standard time, and that they made comparisons between the clock and their watches. McCampbell, Turner, Wheelon, and Rogers, witnesses for the relator, are very nearly in accord as to the time when the verdict was rendered by their watches, and they place the time at about 46 minutes after twelve o'clock; and if it be conceded that they carried correct standard time, which was only 30 minutes ahead of sun time, then it would follow that the clock was wrong, and the verdict was rendered 10 or 15 minutes after 12 o'clock by true sun time. McDonough, Wrather, and Russell, all officers of the court, set their watches with the clock. They, too, fail to depreciate their watches as being otherwise than good timekeepers. As to the first two, we are not informed that they made any comparison of their watches with the clock at the trial to see whether the clock was running fast or slow as compared with their time; but as to Judge Russell, he testifies that he compared his watch with the clock at the trial, and there was only a difference of two or three minutes between them. Caldwell and Smith, two other witnesses, both for the State, testify that they were jurors in the case against the relator; that each had a watch, and, like all the others, good timepieces; that they carried standard time; that they paid particular attention to the courthouse clock in connection with the time kept by their watches; they knew how their watches were with reference to the clock's time before they went into the jury room; they testified that their watches, keeping standard time, were 30 minutes faster than the courthouse clock, and that when they brought their verdict in they looked at the clock, and when the verdict was read it was then 16 minutes before 12 o'clock, and that the sentence was passed on the defendant a very few minutes thereafter, not exceeding 5 or 10 minutes. This testimony is strongly corroborative of the correctness of the clock's time, as compared with standard time, which was 30 minutes faster than true sun time, and, in our opinion, brings the rendition of the verdict and passing of sentence on the relator within the time prescribed by law for the term of the court, and the District Judge who heard the testimony having so found, in our opinion the judgment of the lower court ought to be affirmed, and it is so ordered.

*Affirmed.*

DAVIDSON, J., absent.

ON REHEARING.

*February 20th, 1895.*

HENDERSON, JUDGE.—The appellant has filed a motion for a rehearing of a judgment of affirmance rendered in this case at a previous day of this term. The appellant shows in his motion no other grounds for revising the judgment of the lower court than those urged in his brief for a reversal of the case. In addition to what was said by the court in affirming the case, it may be stated that the emergency in Article 797 of the Code of Criminal Procedure, which provides for the entry of a judgment, "nunc pro tunc," as insisted on by counsel, did not occur. The clerk proceeded, under the direction of the court, to make the entry of judgment as soon as the verdict was brought in and presented by the jury, and as soon as the motion for a new trial was overruled, and defendant sentenced, he proceeded to enter these orders. The statutes authorize this to be done in a case like this, where an appeal is taken after the legal hour of adjournment on the last day of the term. The verdict was received, and the sentence passed on defendant, and notice of appeal given, all before 12 o'clock m., on Saturday night, the 14th of May, 1892, and the entries were completed afterwards, and before the time allowed to do this by law had expired. See Articles 795, 796, Code Criminal Procedure. The motion for rehearing is refused.

*Motion overruled.*