## W. H. LAIRD v. THE STATE.

No. 3900. Decided January 26, 1916.

Rehearing granted March 1, 1916.

**1.—Perjury—Appeal—Recognizance—Bail Bond—Jurisdiction.**

Where, upon trial of perjury, the defendant appealed to this court but did not enter into a recognizance until the next term of the trial court and remained in jail until then, this court had jurisdiction of the appeal, and it was not necessary that appellant should have given an appeal bond instead of the recognizance, under articles 901-904, inclusive, Code Criminal Procedure. Prendergast, Presiding Judge, dissenting.

**2.—Same—Bail Bond—Procedure—Statutes Construed—Vacation.**

Articles 901-904, inclusive, Code Criminal Procedure, governing recognizance and bail bonds, should be so construed that if the trial court is in session after the defendant is convicted, a recognizance should be given, and a bail bond is only authorized to be taken when the court is in vacation. This court considers this to be the better procedure; of course, the sheriff is authorized to take a bail bond before defendant is convicted even though the court be in session, under article 337, Code Criminal Procedure. Prendergast, Presiding Judge, dissenting.

**3.—Same—Indictment—Divorce—Residence—Jurisdiction—Perjury.**

Where, upon trial of perjury, the indictment alleged that defendant had theretofore brought a suit for divorce in which he alleged and testified that at the time of the institution of the suit he had been a resident of the State for twelve months, and that this allegation was false. Held, that an indictment for perjury would lie, and the contention that the court had no jurisdiction of the divorce suit, and that, therefore, no indictment for perjury would lie, is untenable. Following Cordway v. State, 25 Texas Crim. App., 405, and other cases. Davidson, Judge, dissenting.

**4.—Same—Evidence—Husband and Wife—Void Judgment—Witness.**

Where, upon trial of perjury, the defendant contended that even though perjury could be assigned on his testimony given on the divorce trial, towit, that he was a resident of the State for more than twelve months next preceding the filing of his petition, which was alleged to be false in the indictment for perjury, yet inasmuch as no judgment or decree of divorce could therefore be legally entered, that the woman from whom he was adjudged a divorce is still his legal wife and cannot be used as a witness against him. Held, there being nothing on the face of the divorce proceedings which would render the judgment void or tend to show that defendant had not been a resident of Texas for twelve months, etc., the regularity of the decree of divorce can not be collaterally attacked, and his former wife was therefore a competent witness against him. Davidson, Judge, dissenting.

**5.—Same—Rule Stated—Judgment—Collateral Attack—Evidence Aliunde.**

If the decree is either void or voidable, it must be shown by evidence aliunde the record, and as long as this record stands and no suit is brought to set it aside, it cannot be collaterally attacked, much less can it thus be

Vol. 79 Crim.-9

attacked by the person who caused, and at whose instance it was entered. Following Martin v. Robinson, 67 Texas, 375, and other cases. Davidson, Judge, dissenting.

**6.—Same—Rule Stated—Judgment—Jurisdiction—Collateral Attack.**

While the general rule is well established that a judgment rendered by a court, even of general jurisdiction, is void, if it had at the time of the rendition of the judgment no jurisdiction of the person of the defendant, or the subject matter of the litigation, yet there is another rule equally well settled upon principle of public policy which precludes inquiry by evidence aliunde the record, in a collateral attack upon a judgment of a domestic court of general jurisdiction regular on its face, into any fact which the court rendering such judgment must have passed upon in proceeding to its rendition. Following Crawford v. McDonald, 88 Texas, 626, and other cases. Davidson, Judge, dissenting

**7.—Same—Evidence—Charge of Court—Limiting Testimony.**

Where, upon trial of perjury, based upon false testimony, given by the defendant in a divorce suit, towit, that he was a resident of the State of Texas more than one year before the institution of said suit, the State introduced in evidence the original petition for divorce and the judgment entered thereon as a matter of inducement to the assignment of perjury, etc., it was necessary for the court in his charge to limit and restrict the purpose for which said testimony was introduced; however, as such testimony was also introduced for another purpose to show that defendant's former wife was divorced by said decree and was no longer the wife of said defendant, and to meet defendant's collateral attack on said judgment it was not necessary for the court to limit said testimony.

**8.—Same—Evidence—Civil Suit—Petition — Judgment — Limiting Testimony—Charge of Court.**

Upon trial of perjury based upon the false testimony of the defendant given by him in a divorce suit, towit, that he had been a resident of the State of Texas for twelve months next preceding the filing of his suit for divorce, there was no error in admitting in evidence the petition and judgment in said divorce suit as tending to show that defendant had so testified in the trial of the divorce case, although said petition and judgment could not be used to show that said testimony in said divorce suit was false, the court limiting said testimony to said purpose; but there being no question that defendant had so testified in the divorce suit and in the absence of any testimony to the contrary, the court's failure to limit said testimony was not reversible error. Following Trent v. State, 31 Texas Crim. Rep., 251, and other cases. Davidson, Judge, dissenting.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Robert B. Allen* and *Chas. A. Pippen*, for appellant.—On question of void judgment: Emery v. State, 57 Texas Crim. Rep., 423, 123 S. W. Rep., 133; Ethridge v. State, 173 S. W. Rep., 1031; Ethridge v. State, 175 S. W. Rep., 702; Butler v. State, 38 S. W. Rep., 46; Wilson v. State, 10 S. W. Rep., 749; Andrews v. State, 7 S. W. Rep., 410; Davidson v. State, 3 S. W. Rep., 662.

On question of introducing petition and judgment in evidence, and

not limiting same: Davidson v. State, 22 Texas Crim. App., 372; Washington v. State, 23 id., 336; Littlefield v. State, 24 id., 167; Kitchen v. State, 26 id., 165; Foster v. State, 32 Texas Crim. Rep., 39.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of perjury and assessed the lowest punishment.

If this court had jurisdiction of this cause, some interesting, and perhaps difficult, questions would have to be decided. However, because we have reached the conclusion that this court has no jurisdiction, the decision of these questions is pretermitted.

The Assistant Attorney General has made a motion to dismiss this cause, because this court has lost, if it ever had, jurisdiction thereof. This motion is based upon an uncontroverted state of facts, shown by the transcript and various affidavits. These are the facts:

. The term of court at which appellant was convicted, both as a matter of fact and as fixed by law, convened July 5th and adjourned October 2, 1915. The trial occurred, and the verdict was rendered and the judgment thereon entered, September 24, 1915. Within that term and in proper time appellant made his motion for a new trial and by leave of the court within term time filed an amended motion. These were heard and overruled by the court on October 1, 1915, at which time the appellant gave notice of appeal to this court, which was duly then and there entered on the minutes of the court. Immediately thereafter he was properly sentenced. In overruling his said motions, the court as a part of that order fixed the amount of appellant's recognizance at $2000, and, he being present and in custody, was committed to jail until the decision of his case on appeal by this court. The sentence also is to the same effect.

Appellant did not enter into a recognizance at that term of court, nor attempt to do so, so far as this record·discloses, but the sheriff by virtue of said orders and the law then having him in custody, properly confined him in the county jail. The next term of that court convened on Monday, October 4th, and continued in session for that October term the time required and authorized by law. On October 8th, during that October term, in open court, appellant attempted to gain his liberty, and did so, by on that date, in open court, entering into a recognizance pending his appeal here. That recognizance, both in substance and in form, follows the statute (C. C. P., art. 903). Under that recognizance he was discharged by the sheriff from jail and from his custody, and he has continuously since then been at liberty and still is.

Under the statutory law of this State from the organization thereof continuously down to the Act of March 15, 1907, page 31, an appellant on a felony conviction was required to be committed to jail and held therein pending his appeal and until his appeal was decided by this court (Wh. An. C. C. P., art. 876), and, if he secured his liberty

from custody in any way, the statute prescribed (Wh. An. C. C. P., art. 880) : "The jurisdiction of the Court of Criminal Appeals shall no longer attach in the case," but this court was required on the motion of the attorney representing the State, "to dismiss the appeal."

Said Act of 1907 was carried into the Code of Criminal Procedure under proper sections by the revision of 1911. By the provisions thereof (art. 901, C. C. P.) an appellant in a felony case where the punishment assessed is fifteen years or less is given the right to remain on bail during the pendency of his appeal by entering into a recognizance in said court at the term of conviction in the sum fixed by the court. The next article expressly requires that, when a defendant appeals from a felony conviction that he be committed to jail unless he enters into such recognizance, and further provides that, "if he be in custody, his notice of appeal shall have no effect whatever to release him from custody until he enters into recognizance," and that no recognizance shall be taken or allowed unless he is in custody of the sheriff at the time. Article 904 provides that, "if for any cause, he fails to enter into and make said recognizance during the term of court but gave notice of and took an appeal from such conviction during such term, he shall, notwithstanding such failure, be permitted to give bail and obtain his release from custody by giving, after the expiration of such term of court, and in vacation, his bail bond to the sheriff, with two or more good and sufficient sureties, in which he, together with his sureties, shall acknowledge themselves severally indebted to the State in the sum fixed by the court, upon the conditions provided for a recognizance, but before such bail bond shall be accepted and the defendant released from custody by reason thereof, the same must be approved by such sheriff and the court trying said cause, or his successor in office. That, when said bond is so given, approved and accepted, the defendant shall be released from custody." Said Act and our laws all the time have expressly provided for both recognizances and bail bonds. They are entirely separate and distinct. The statute makes them so. (Arts. 316-317 and 320-321, C. C. P.) This court has no right to legislate and enact that one is the same as the other, or that one can take the place of the other. The statute has at all times specifically and particularly enacted when and how either one or the other may be executed. That when either is so separately executed at the time and under the circumstances fixed by the statute, it may have the same effect so far as authorizing the discharge of the appellant from custody is concerned, does not make them the same instrument and can not do so, under the express provisions of our statute.

It has always been held by this court and our Supreme Court, when it had criminal jurisdiction, that a bail bond or recognizance is strictly statutory, and to entitle the State to a forfeiture thereon it must contain all the requisites prescribed by the statute. The principles of equity as applied to private contracts can not be invoked in the construction of a bail bond or recognizance. Wallen v. State, 18 Texas

Crim. App., 414; Turner v. State, 14 Texas Crim. App., 168; LaRose v. State, 29 Texas Crim. App., 215.

Where a change of venue is had, a bond taken by the sheriff of the county *a quo* for the appearance of the defendant in the new county is void. Harbolt v. State, 39 Texas Crim. Rep., 129.

A bail bond taken in a misdemeanor case, of which the District Court had no jurisdiction, under process issued by the district clerk, is void. Cassaday v. State, 4 Texas Crim. App., 96.

A bail bond not signed is void even though an affidavit thereto is signed. Nelson v. State, 44 Texas Crim. Rep., 595.

If such bond be not signed by the principal, it is void. Price v. State, 12 Texas Crim. App., 537; Scarborough v. State, 20 S. W. Rep., 584; Tierney v. State, 31 Texas, 41.

One fair criterion for determining whether a recognizance or bail bond is sufficient would be, if upon a forfeiture thereof, the sureties could be held and a judgment had against them in a *scire facias* proceeding. We take it, it would be clear that, if this court had jurisdiction and should affirm this case and appellant should not appear in the court below as required by said recognizance, the sureties herein could successfully defeat any judgment against them by showing, as the facts herein unquestionably are, that neither they nor their principal entered into any recognizance at the term of court at which he was convicted and appealed, but instead unlawfully and illegally entered into a recognizance at another and different term of court, and that that court at a subsequent term had no power or authority to take his recognizance.

We think it unnecessary to cite a large number of cases. The statutes alone are amply sufficient. Cases are cited by Judge White in his Ann. Crim. Prac., by Mr. Branch in his Crim. Law, and by Vernon's Ann. Crim. Proc., under the various articles of the statutes applicable to this question.

We have concluded that the jurisdiction of this court has been ousted by the action of appellant, and the cause must, therefore, be dismissed.

*Dismissed.*

DAVIDSON, JUDGE, absent.

ON REHEARING.

March 1, 1916.

HARPER, JUDGE.—On a former day of this term this cause was dismissed because appellant, after the adjournment of the term of court at which he was convicted, entered into a recognizance at the next term of the court, it being held that after the adjournment of the court for the term, at which appellant was tried, the statute only authorized the giving of a bail bond, and he having given a recognizance, the jurisdiction of this court was ousted when he was allowed to go at large after giving a recognizance,—he would in law be regarded as having escaped confinement. At the time the case was originally before the

court the writer at that time suggested this was not the construction that should be given the statute, but instead the proper construction of it was that if the court was in session, a recognizance was authorized to be taken, and a bail bond could be given only when the court was in vacation. The articles governing this matter are articles 901, 902, 903 and 904. That the recognizance given is in accordance with article 903 is not questioned, but it is contended that the proper construction of these articles is that if a recognizance is given, it must be at the term at which the trial was had, and if not then given, a person can secure his release only by giving a bail bond, in lieu of a recognizance, and it is claimed this is the proper construction of article 904, which reads:

"If, for any cause, the defendant fails to enter into and make the recognizance mentioned in article 903 during the term of court, but gave notice of and took an appeal from such conviction during such term, he shall, notwithstanding such failure, be permitted to give bail and obtain his release from custody by giving, after the expiration of such term of court and in vacation, his bail bond to the sheriff, with two or more good and sufficient sureties," etc.

To the writer's mind, this article was clothed in such language as to be subject to either construction, and while he thought that perhaps the better construction would be that if the court was in session, a recognizance should be given, and a bail bond was only authorized to be taken when the court was in vacation, and, therefore, no recognizance could be entered into, yet after discussing it with the other members of the court, as it was only a matter of procedure, he said he would not dissent from such holding, as he thought it better to get a settled construction. Since the original opinion has been handed down, we have been led to a further study of the question, and we find that when the Criminal Procedure required, when the court was in session, that a defendant, when arrested for a felony, enter into a recognizance in open court, and a sheriff was authorized to take bond only when the court was in vacation, articles 325 and 326 (White's Ann. Proc.), it was held that if the court be in session, either at the term at which the indictment was returned or at a subsequent term, the sheriff could not take a bail bond, but the defendant was required to enter into a recognizance. (Kiser v. State, 13 Texas Crim. App., 201; Gregg v. State, 18 Texas Crim. App., 295; LaRose v. State, 29 Texas Crim. App., 215.) The Legislature, apparently on account of these decisions and the inconvenience sometimes caused, in 1907 amended this article of the statute, now article 337, and authorized the sheriff to take a bail bond even though the court be in session, but it took an Act of the Legislature to authorize a sheriff to take a bail bond when the court was in session, whether at the term at which the indictment was returned or a subsequent term. At the same session of the Legislature, in 1907, the Act was passed which, for the first time, authorized a person convicted of a felony, to give a recognizance or bail bond on appeal, if the punishment assessed did not exceed fifteen years confine-

ment in the penitentiary. (Chap. 19, Sess. Acts 1907.) In the emergency clause to this bill the Legislature declares:

"The large amount of costs incurred by keeping the defendant in the custody of the sheriff during a trial when he is charged with felony, and during the appeal taken from felony convictions, and the frequent hardships endured by the defendants who are not guilty of a violation of law, and the liberty of the citizen, as well as the interests of the State, create an emergency and an imperative public necessity requiring that the constitutional rule requiring bills to be read on three several days be and the same is hereby suspended, and that this act take effect from and after its passage, and it is so enacted."

The purpose of the Legislature is made manifest by this Act, to save costs of keeping the prisoners confined to the counties, and to keep innocent people from being punished by confinement in the county jails. But in thus providing they wanted the court to have a supervision and see that adequate sureties were given, and if the court was in session a recognizance must be given so that he might investigate the solvency of the sureties; if the court was not in session, a bail bond could be executed, but the amount of this bail bond must be fixed by the trial judge, and he must approve the bond, in addition to the sheriff—that he might inquire of the sheriff as to the investigation he had made as to the solvency of the sureties. At this session of the Legislature they dealt with both bail bonds and recognizances before conviction and after conviction, and in one instance (before conviction) they provided that a sheriff might take a bail bond even though the court was in session, but, after conviction, the only instance in which a sheriff was authorized to take a bail bond was (and they use the words) *in vacation*, and then provided before the prisoner is released the bond must be presented to the court trying the cause, and be approved by him. To the mind of the writer, it was the clear intent and purpose of the Legislature, after conviction, to only authorize the sheriff to take a bail bond while the court was in vacation, and if the court was in session, even though at a subsequent term, a recognizance must be entered into in open court. This construction is in accordance with the construction of the former Act, which applied to prisoners before conviction, and which the Legislature amended at this session, and which it must in consequence have had in mind, and for this reason the writer thinks the cause should be reinstated, but as hereinbefore stated, it is but a matter of procedure, and if a majority of the members of this court think the proper construction is that even though the court at which one is convicted is in session at a subsequent term, a bail bond only will confer jurisdiction on this court, he will acquiesce in such construction and dissent no further. And being of the opinion that the case should be reinstated, he will proceed to pass on the questions raised in the record.

In the first place, we do not think there was any error in overruling the motion to quash the indictment. The defendant, as plaintiff, brought suit in the Civil District Court of Dallas County for a divorce

from his wife, Mrs. Jessie Laird, alleging that, at the time of the institution of the suit, he had been a resident of Texas for twelve months. · In the indictment in this case this is alleged to be false and untrue, and appellant seemingly contends that if he had not been in fact a resident of Texas twelve months, the District Court of Dallas County would have no jurisdiction of the cause of action, and, therefore, if he swore falsely in such suit, no indictment for perjury would lie. The petition was introduced in evidence, in which it is alleged "that plaintiff is a resident of Dallas, Dallas County, Texas, and has been for more than twelve months next preceding the filing of the petition." If the defendant, Mrs. Jessie Laird, had appeared in that cause and filed a plea to the jurisdiction of the court and in abatement of the suit, alleging that appellant, plaintiff in that cause, had not been a resident of this State for twelve months, the court would have had jurisdiction to hear and determine that question, and if appellant on the hearing of that plea had been sworn and testified he had been a resident of Texas for twelve months, yet upon hearing the other testimony, the court had found his testimony false, and dismissed the suit for want of jurisdiction to hear the cause, yet an indictment for perjury would lie, because the testimony was given in the course of a judicial proceeding in a court which had jurisdiction to hear and determine that question. And inasmuch as Mrs. Laird did not appear and in order to get the court to hear and entertain the suit and grant him a divorce, if appellant testified he had been a resident of Texas for twelve months in order to obtain a decree of divorce from his wife, and such testimony was in fact untrue, an indictment for perjury based thereon will lie, and the court did not err in so holding. Cordway v. State, 25 Texas Crim. App., 405; Anderson v. State, 24 Texas Crim. App., 705; Higginbotham v. State, 24 Texas Crim. App., 505; Etheridge v. State, 173 S. W. Rep., 1031. And it has been held that assignment of immaterial matter, in connection with material matter, does not vitiate the indictment. Dorrs v. State, 40 S. W. Rep., 311; Jefferson v. State, 49 S. W. Rep., 88.

But the next question presented is one of more difficulty. Appellant contends that even though perjury could be assigned on his testimony given on the divorce trial, the judgment and decree of divorce entered therein is absolutely void, and if void, the woman from whom he was adjudged a divorce in that decree is his legal wife, and she can not, therefore, be used as a witness against him. Appellant, according to this record, came to Texas from New York in December, 1913, leaving a wife and child in New York. In September, 1914, following he filed a suit for divorce in the Sixty-eighth District Court of Dallas County, Texas, alleging that he had been a resident of Texas for twelve months, and making allegations in respect to his wife. In the petition he alleged he did not know the address of his wife, and she was cited by publication. When the case came on to be heard Judge Whitehurst testifies appellant took the stand as a witness and testified he had been a resident of Texas for twelve months immediately preceding the filing

of the petition for divorce, and testified to the truth of the allegations upon which he sought a divorce. Judge Whitehurst, on the testimony of appellant, granted the divorce, and a decree was entered granting him an absolute divorce from Mrs. Jessie Laird, the decree reading:

"A jury being waived and the court having heard the pleadings and the evidence, and the argument of counsel, is of the opinion that the material allegations in plaintiff's petition are true. It is, therefore, ordered, adjudged and decreed by the court that the bonds of matrimony heretofore existing between said plaintiff, Jessie Laird, and defendant, W. H. Laird, be and the same are hereby annulled and dissolved and that each party hereto is hereby restored to the status of single persons."

Appellant's contention is that, although he may have brought this suit, testified as stated above, and obtained to be decreed and entered this decree of divorce, as he had not been in Texas twelve months, the decree is a nullity and void, and, therefore, Mrs. Jessie Laird was not and is not a competent witness against him. One must bear in mind, in passing on this question, that there is nothing in the record of the proceedings in the Sixty-eighth District Court which would render the judgment void or tend to show that he had not been a resident of Texas for twelve months. On the face of the pleadings and by the entire record made in that case, the jurisdiction of the District Court is shown, and the regularity of its decree.

If the decree is either void or voidable, it must be shown by evidence *aliunde* the record. Now so long as this record stands and no suit is brought to set it aside, can it be collaterally attacked, and especially can it thus be attacked by the person who caused and at whose instance it was entered? Upon the decision of this question rests the question of whether or not Mrs. Jessie Laird was a competent witness against appellant. If she was not a competent witness the case must be reversed, because she gave very material testimony to show the falsity of the testimony said to have been given by appellant on the trial of the divorce suit.

Now, the evidence, and all the evidence, shows that appellant brought the divorce suit and procured that judgment of divorce to be entered. Under the Constitution and laws of this State, the District Court of the Sixty-eighth District had jurisdiction of the subject matter of the suit—the granting of divorce. (Const., art. 5, sec. 8.) Having jurisdiction of the subject matter, the appellant in his petition alleged a state of case which invoked that jurisdiction, and on the *record* as made in that court the decree is valid and binding on all the world, and especially binding on appellant. In the case of Martin et al. v. Robinson, 67 Texas, 368, Judge Stayton, speaking for the Supreme Court, says: "Such a court must determine whether the facts exist which make it lawful for administration to be granted, and if in this respect, having power to make the inquiry, it comes to an erroneous conclusion, its decree on such conclusion is voidable but not void," citing Lynch v. Baxter, 4 Texas, 431; Burdett v. Silsbee, 15 Texas,

604; Giddings v. Stelle, 28 Texas, 733. So in this case, when appellant's petition in the District Court, he being plaintiff in the action for divorce, came on to be heard, he having cited his wife by publication, the court in accordance with the provisions of law, appointed an attorney to represent the defendant, the absent wife. This attorney filed a general denial, which put plaintiff to strict proof of his allegations. After this evidence, the court may have erred in the conclusion he came to, yet under the evidence offered the court came to the conclusion that plaintiff had been a resident of Texas for twelve months, and such judgment can not be collaterally attacked, but the only way to nullify it is to bring a direct suit for that purpose. As said by our Supreme Court in Crawford v. McDonald, 88 Texas, 631:

"The general rule is well established, that a judgment rendered by a court even of general jurisdiction is void, if it had, at the time of the rendition of the judgment, no jurisdiction of the person of the defendant or the subject matter of the litigation. This principle is self-evident, because until the court acquired jurisdiction it has no power to proceed to investigate and determine private rights. *Logically* it can make no difference as to the validity of the judgment, whether the lack of jurisdiction of the person or the subject matter appears from the face of the record, or is made to appear by evidence *aliunde*. For if, for instance, no service was had upon the defendant, he not appearing in the case, the court, having no jurisdiction whatever over his person, is absolutely without power to bind him by an adjudication that he had been in fact duly served; and logically this want of power is the same, whether the lack of jurisdiction appears on the face of the record or not. There is, however, another rule of law equally well settled upon principles of public policy, which precludes inquiry by evidence *aliunde* the record, in a *collateral attack upon a judgment of a domestic court of a general jurisdiction, regular on its face,* into any fact which the court rendering such judgment must have passed upon in proceeding to its rendition. Therefore it is well settled that where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, be allowed to show by evidence *dehors the record* that the judgment was rendered without any service whatever upon him. Logically the judgment is in fact void, but on grounds of public policy the courts, in order to protect property rights, apply the rule aforesaid, which precludes inquiry into facts *dehors* the record for the purpose of showing the invalidity of the judgment; and, therefore, for all practical purposes, in such collateral attack, the judgment is held valid. This rule is analogous to and probably as important as the rule forbidding the introduction of verbal testimony to vary or contradict the terms of a written contract, except in a proceeding instituted for the purpose of correcting, reforming, or annulling the same. These principles have long been acted upon by this court, as applicable to judgments of the District, Probate, and Justice Courts, and have become

settled rules of property in this State. Murchison v. White, 54 Texas, 78; Williams v. Ball, 52 Texas, 603; Brown v. Christie, 27 Texas, 73; Heck & Baker v. Martin, 75 Texas, 469; Foweler v. Simpson, 79 Texas, 611; Martin v. Burns, Walker & Co., 80 Texas, 677; Hardy v. Beaty, 84 Texas, 562. Whether an exception has been engrafted upon this rule by the decision of the Supreme Court of the United States in Pennoyer v. Neff, 95 U. S., 565, and if so, what is the effect thereof, is foreign to this discussion. Martin v. Burns et al., 80 Texas, 676; Hardy v. Beaty, 84 Texas, 562.

"Since the rule of public policy above referred to precludes inquiry in a collateral attack into even a jurisdictional fact, when the evidence thereof does not appear from the face of the record, it must follow, for stronger reasons, that the judgment in this case affirming the sale can not be attacked collaterally by evidence dehors the record to the effect that the sale was not in fact made at the place required by law. The court in confirming the sale will be conclusively presumed in this collateral attack to have investigated and determined correctly that the sale was made at the proper place, and no evidence aliunde to the contrary will be permitted to impeach the correctness of the judgment. The only relief, if any, permitted by the rules of law against an improper determination of such question by the court in rendering such judgment of confirmation, is to be found in a direct attack upon the judgment where the court has full power to adjust the equities of the parties litigant. We are, therefore, of the opinion, that this judgment can not be attacked by the evidence dehors the record of the probate court that the sale was not made at the courthouse door of Grayson County. Brown v. Christie, 27 Texas, 73."

But were the above not the general rule our Supreme Court has settled the question that appellant, having instituted the civil suit, and prosecuted it to judgment, can not collaterally attack it. In Hefron v. Cunningham, 76 Texas, 312, it was held: "One in whose favor a judgment is rendered in a suit brought in his name by counsel employed by him to sue, can not be heard in a collateral proceeding to attack the *jurisdiction* of the court so long as he resorts to no means to correct or annul the judgment." This is not only the rule in this State, but Cyc., vol. 23, p. 1067, says: The rule forbidding the collateral impeachment of judgments applied to all persons who were parties to the action in which the judgment was rendered, citing cases from many different States.

In Cent. Digest, vol. 30, under title Judgments, sec. 931, is cited a list of authorities which hold that a collateral attack on a judgment for want of jurisdiction of a party thereto, which must be shown by facts outside the record, can only be made by one not a party to the judgment. 136 Ind., 484, 52 Miss., 112, 37 N. Y. Supp., 635, 36 S. W. Rep., 983, and cases cited.

It is thus seen that the rule of law is, that if the court rendering the judgment has jurisdiction of the subject matter, and the record as made would show that its jurisdiction had been properly invoked, the

judgment is not void but voidable only, and can not be collaterally attacked by the person securing the judgment to be entered, but must be set aside by direct proceedings, if it is to be avoided.

And as in this case appellant had procured a decree of divorce to be entered in a court having jurisdiction of divorce proceedings, annulling the bonds of matrimony existing between him and Mrs. Jessie Laird, he can not collaterally attack that judgment, and, as the divorced wife is permitted under our law to testify, the court did not err in permitting her to do so.

The only other question presented in the brief is one of some difficulty to the writer. The petition filed by appellant to obtain the divorce and the answer of the attorney appointed by the court to represent the absent defendant, whose residence was alleged to be unknown, and who was cited by publication, and the judgment decreeing a divorce, were properly admitted in evidence, and the admissibility of this testimony is not contested by appellant, but he contends the court erred in not limiting the purpose for which the jury might consider such testimony. The general rule is as contended by appellant. He says:

"On the trial of the defendant herein the State introduced in evidence the original petition for divorce filed in the District Court for the Sixty-eighth Judicial District of Texas in the case of W. H. Laird v. Jessie Laird, No. 18000-C, and also introduced in evidence the judgment entered in said cause as of March 1, 1915. Said petition and said judgment were competent and admissible to show inducement in the matter assigned as perjury and for the purpose of showing that a trial was had in the District Court for the Sixty-eighth Judicial District of Texas of matters over which said court had jurisdiction, and for the purpose of showing the materiality of the particular matters assigned as perjury in this case.

"While said testimony was admissible for the purposes stated, it is well settled by an unbroken line of decisions in this State that the court in his charge must limit and restrict the purpose or purposes for which same can be considered by the jury in arriving at their verdict. 'Wherever extraneous matter is admitted in evidence for a specific purpose incidental to, but which is not admissible directly to prove the main issue, and which might be taken, if not explained, to exercise a wrong and undue or improper influence on the jury as injurious and prejudicial to the rights of the party, then it becomes the imperative duty of the court to so limit and restrict it as that such unwarranted results can not ensue; and a failure to do so will be radical and reversible.' 'In perjury, the judgment and record of the trial in which the perjury was committed are legitimate as evidence by way of inducement, though not to prove the perjury, and it is error for the charge not to limit and restrict said evidence,' citing Davidson v. State, 22 Texas Crim. App., 372; Washington v. State, 23 Texas Crim. App., 336; Maines v. State, 23 Texas Crim. App., 568; Littlefield v. State, 24 Texas Crim. App., 167; Higgenbotham v. State, 24 Texas Crim. App., 505; Kitchen v. State, 26 Texas Crim. App., 165; Foster v.

State, 32 Texas Crim. Rep., 39; Estill v. State, 42 S. W. Rep., 305."

The writer thinks these cases correctly announce the law in holding that when the record of the proceedings in the case in which it is contended the perjury was committed is introduced, such evidence must be limited, as contended by appellant, when that is the only purpose for which such testimony is legitimately admissible.

But appellant, by objecting to Mrs. Laird testifying when called as a witness, rendered the testimony admissible for another purpose. It became compulsory on the State to show that a decree of divorce had been granted, and under said decree she was no longer the wife of appellant, and when he sought to collaterally attack this decree as being void, on the ground that the court had no jurisdiction, it became compulsory on the State to show that the decree was entered in a court having jurisdiction to grant divorces at the instance and request of appellant, and the record in that cause became admissible for that purpose as well as a matter of inducement, and to show the materiality of the alleged false testimony. Appellant by objecting to Mrs. Laird testifying compelled the State to procure and introduce this testimony to render her a competent witness, and he can not be heard to complain that such testimony was only admissible as a matter of inducement. He by his objection had rendered it admissible for another and different purpose, and compelled its introduction to render a witness a competent witness, and this perhaps is the reason the trial court did not in his charge seek to limit the testimony.

However, appellant contends that the testimony was of such a nature that it could be used by the jury in establishing his guilt, and it was not admissible for that purpose. Appellant is correct in his contention that the petition and judgment were not admissible on the issue of his guilt of the charge of perjury; but would or could it have an undue influence in establishing appellant's guilt? The petition was an ordinary petition for divorce, in which it alleged appellant's residence; that the residence of Mrs. Laird was unknown, and, among other grounds, alleged that Mrs. Laird was an immoral woman, and had been guilty of immoral conduct. The charge of perjury is based on the allegation that appellant on the trial of the divorce suit testified to the truth of such allegations, and that the testimony so given by him was false and known by him to be untrue when he so testified. The petition or the judgment could and would have no bearing in proving the falsity of such testimony. In fact, if such testimony had any bearing on that issue, which we doubt, its tendency would be to show that such testimony was in fact true, because the court had so found in the divorce suit, and adjudged a divorce on those grounds. So on that issue the falsity of his testimony could not have any bearing to the hurt of appellant, but would rather have been helpful.

On another issue in the case, however, we can not say such testimony would have no tendency to establish its truth. The indictment alleged that on the trial of the divorce suit appellant had testified: "1. On September 11, 1914, I did not know the address or where-

abouts of the defendant, Mrs. Jessie Laird. 2. On March 1, 1915, I did not know the address or whereabouts of the defendant, Mrs. Jessie Laird. 3. On September 11, 1914, I had been a resident of the State of Texas for twelve months next preceding the filing of my suit for divorce. 4. On September 11, 1914, I had been an actual bona fide inhabitant of the State of Texas for twelve months next preceding thereto. 5. From the 11th of September, 1913, to December 1, 1913, I was not an inhabitant or resident of the State of New York. 6. On or about September 1, 1913, I came to Texas accompanied by my wife, Mrs. Jessie Laird, who lived with me in Texas until on or about December 1, 1913, at which time she, the said Mrs. Jessie Laird, left me at San Marcos, Texas, and left with another man for parts unknown to me. 10. Mrs. Jessie Laird was unfaithful to me and associated with immoral people."

It was incumbent upon the State to prove (1) that appellant had so testified in the trial of the divorce case, and (2) that said testimony was false, and known by appellant to be untrue when he so testified. As before said, on the second of these issues, the falsity of such testimony, the petition and judgment, could and would have no bearing to the detriment of appellant, but on the first of these issues, that he had so testified, the petition and decree might and probably would have some tendency to prove that he had so testified. When appellant plead not guilty to the charge of perjury, before he could be adjudged guilty, the State was required to prove beyond a reasonable doubt both that appellant had so testified and that such testimony was false, and as the petition and judgment could and might have some tendency to prove that appellant had so testified, or might be so construed by the jury, the court in his charge should have instructed the jury that such testimony could not be considered by the jury in passing on the guilt of appellant on the charge of perjury. Having said that much, we come now to consider whether or not a failure to so instruct the jury requires a reversal of the case at our hands. If it could have worked any injury to appellant, we should not hesitate to reverse the case, and upon this issue the writer has hesitated and been slow to arrive at a conclusion. Had the appellant on the trial of the perjury case offered any testimony that he had not so testified in the trial of the divorce case, the writer would not agree to an affirmance of this case, because the petition and judgment in that case might have had some tendency to prove that he had so testified. But inasmuch as appellant offered no testimony that he did not so testify, and the testimony and all the testimony introduced on that issue in the perjury trial was that appellant had so testified in the divorce suit, the jury, without the introduction of the petition and judgment, would not have been authorized to find that he had not so testified, or have grounds, under the evidence on the perjury trial, for a reasonable doubt that he had so testified under such circumstances we have come to the conclusion that, in the absence of any testimony he had not so testified, we, under the decisions of this court, are not

justified in reversing the case because the court failed to limit such testimony. The testimony was admissible, as admitted by appellant, on some issues in the case, and as to the issue on which he claims it should not have been considered by the jury, appellant offers no testimony, while the State offered testimony upon which the jury could not have found otherwise, if the petition and decree had not been introduced in evidence. (Trent v. State, 31 Texas Crim. Rep., 251; Elliott v. State, 39 Texas Crim. Rep., 242; Marsden v. State, 59 Texas Crim. Rep., 38; Fitzpatrick v. State, 37 Texas Crim. Rep., 20.) In the case of Franklin v. State, 38 Texas Crim. Rep., 348, the court held that if the record introduced would not tend to show the falsity of the testimony alleged to have been given, it was not error to fail to limit the testimony.

In this case, after a careful review of the decisions of this court, we have arrived at the conclusion as the petition and judgment were admissible not only for the purposes of showing inducement and materiality of the testimony alleged to be false, but was also admissible for another purpose, to show the competency of the witness Mrs. Laird, and as said testimony would and could have no bearing on whether the alleged testimony if given was false, and from the further fact that the testimony and all the testimony adduced on the trial of this case shows that appellant did testify as alleged in the divorce suit, no such error is presented by the failure of the court to limit the purposes for which the petition and judgment were admitted as to authorize a reversal of the judgment.

In my opinion the case should be reinstated and affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I agree to the reinstatement of the appeal, but do not agree to the affirmance. The judgment ought to be reversed. I may write later.

PRENDERGAST, PRESIDING JUDGE, dissents from the reinstatement, but concurs in the affirmance.

PRENDERGAST, PRESIDING JUDGE.—The opinion dismissing this cause was correct, and was agreed to expressly by both my associates before it was handed down, though Judge Davidson was absent the day it was handed down. But as it is merely a matter of practice for the first time established, though wrong, I will not further discuss it.

In my opinion the petition in the divorce case was admissible in this, as an admission or statement by appellant, just as any other admission or statement by him would have been, and the court did not err in not limiting as it is claimed by appellant it should have been.

Judge Harper's opinion otherwise is correct, and unquestionably the law of and applicable to this case.

The authorities and principles cited by Judge Davidson in his dis-

senting opinion, are wholly inapplicable to this case, and the questions decided therein.

DAVIDSON, Judge (dissenting).—I do not purpose to discuss the question of reinstatement, but wish to say that I agree with the conclusion reached by Judge Harper that the dismissal was error. I deem it unnecessary to give my own views in regard to the reasons. His conclusion is correct.

I am persuaded that this judgment ought to have been reversed. Making a brief statement, the record discloses that appellant came to Texas from New York, leaving there on the 11th day of December. On the 11th of the following September he filed his petition for divorce in one of the District Courts of Dallas County, being in Texas only nine months. This case was one of perjury based upon appellant's testimony in that case, in which he stated that he had been a bona fide resident of Texas for the required twelve months and in the County of Dallas for the requisite six months. A divorce judgment was thereupon entered. It seems further that the wife had not been in Texas but was a resident of New York at the time the petition for divorce was filed. She was cited, it seems, by publication.

Article 4632, Revised Statutes, as amended by the Act of the Legislature, 1913, page 183, provides that no divorce shall be granted in this State unless the party is a bona fide resident of this State and has been for twelve months prior to instituting divorce proceedings, and of the county in which the suit is filed for six months prior to filing the suit. So far as the writer has been able to ascertain, a judgment of divorce obtained in this State is a nullity, and, therefore, void without the necessary residence. I do not purpose to discuss the case cited by Judge Harper wherein the judgment was had in a probate court and under which subsequently a sale of property occurred and that property became involved in litigation. The court held the probate judgment could not be attacked in collateral proceedings under the facts stated in that case. Those interested in reading the opinion he cites may do so, but it has no application to this case as will be evidenced by its perusal. It has been always regarded an essential difference between the judgments of those courts of competent jurisdiction which in some way improperly act and those courts which have no jurisdiction. Such judgments are placed on different footings. I do not purpose now to discuss that question.

It is the law that wherever a citizen of one State seeks to secure a divorce in another State, he must become a bona fide resident of the State in which he seeks the divorce for the length of time and under the circumstances provided by the statutes of that State, and until this has been done no divorce proceedings can be instituted, and if instituted and judgment is obtained, it is a nullity. I will cite some of the authorities along this line: 9 Am. & Eng. Ency. of Law, p. 734, and for cases collated see note 2. I also refer to 9 Am. & Eng. Ency. of Law, pp. 741, 742, and notes for collated authorities. I also refer

to 7 Standard Encyclopedia and Procedure, pp. 739 and 740, as to what it takes to constitute a resident and citizenship. I also refer to 7 vol. Am. & Eng. Pleading and Practice, p. 146, as to what it takes to constitute an appearance. I also cite Emery v. State, 57 Texas Crim. Rep., 423; Bell v. Bell, 181 U. S., 804; same case reported in 45 L. Ed., 805; Andrews v. Andrews, 188 U. S., 15; Strietwolf v. Strietwolf, 181 U. S., 179. In addition I cite Wilson v. State, 10 S. W. Rep., 749; Lutcher v. Allen, 95 S. W. Rep., 572; Morgan v. Morgan, 21 S. W. Rep., 154; Chum v. Gray, 51 Texas, 114; Riders v. Burnett, 59 Texas, 581; Norwood v. Cobb, 24 Texas, 554; 2 Black on Judgments, 927; 2 Freeman on Judgments, 580; 54 Iowa, 429; 56 Ind., 263; 13 Bush. (Ky.), 318; 25 Minn., 29; 196 Mass., 329; 19 Neb., 706; 19 Kan., 451; 99 Mass., 267. These matters were pretty thoroughly investigated and discussed in Emery v. State, supra, in an opinion by this court, and the same conclusion reached there that the writer believes to be correct and here maintains.

It will be observed with reference to such divorce matters, that they must be governed by State laws. The Acts of Congress have no force and are not applicable,—I mean as applying to granting divorces. It may be further stated that the State control of these matters is limited to citizens. The courts of Texas can not grant a divorce to citizens of other States. There must be not only residence but a bona fide domicile. On this question see cases collated in 9 Am. & Eng. Ency. of Law, pages 741-742, in note 1. Also as to domicile being the test, see page 742, supra, and page 743, and also 7 Standard Encyclopedia & Procedure, pages 739-740. It may also be stated in this connection that appearance merely does not confer jurisdiction. Statutory requirements must be fully met and complied with, or the judgment is a nullity. 9 Am. & Eng. Ency. of Law, p. 746, and notes. It would be useless to follow this question as to what it takes to constitute appearance. Consent can not confer jurisdiction. Such decrees are void. Douglass v. State, 58 Texas Crim. Rep., 122; 42 Texas Civ. App., 478; 7 Standard Encyclopedia & Procedure, 807, note 23.

Without amplifying this phase of the matter further, I turn to another line of authorities which ought to be deemed now as fully settling the question adversely to the State. Ex parte Degner, 30 Texas Crim. App., 566, where a great number of cases are collated; the opinion having been written by Presiding Judge White; Ex parte Taylor, 34 Texas Crim. Rep., 591; Ex parte Kerby, 35 Texas Crim. Rep., 531; Ex parte Kerby, 35 Texas Crim. Rep., 634; Ex parte Duncan, 42 Texas Crim. Rep., 661; Ex parte Tinsley, 37 Texas Crim. Rep., 517; Ex parte Lake, 37 Texas Crim. Rep., 656; Parker's case, 35 Texas Crim. Rep., 12; Juneman's case, 28 Texas Crim. App., 486; Ex parte Snodgrass, 43 Texas Crim. Rep., 359. These cases lay down the proposition that three things must concur and are absolutely necessary to the jurisdiction of the court or as jurisdictional matters: First, the court must have jurisdiction of the person; second, of the

subject matter, and, third, power to render the particular judgment rendered, otherwise prosecution will be void as will also the judgment. All of these cases hold the jurisdiction of the person is essential to the validity of the proceedings, otherwise it is a nullity and void. This rule has been followed in Texas in all its history, commencing with Fleming v. Nall, 1 Texas, 246; see also 10 Texas, 335, 66 Texas, 548, 25 Texas Supp., 132, 9 Texas, 313, 24 Texas, 468, 4 Texas Civ. App., 429. In 12 Encyclopedia of Pleading and Practice, page 179, this rule is stated: "It is an elementary principle, recognized in all the cases, that to give binding effect to a judgment of any court, whether of general or limited jurisdiction, it is essential that the court should have jurisdiction of the person as well as of the subject matter, and that a judgment which appears upon the face of the record to have been rendered without jurisdiction of the subject matter or of the person, or which may be shown to have been so rendered in cases where evidence upon the question is admissible, is absolutely void, no matter in what proceeding or in what action it may thereafter be set up or relied upon." This is supported by a great number of cases cited in the footnotes from many of the States in the Federal Union. Some of these are collated in Emery v. State, supra. This rule has been held to apply also where the court has not acquired jurisdiction of the person under necessary process or pleading, although in fact the accused was tried, citing Wilson v. State, 27 Texas Crim. App., 47; Garrett v. State, 37 Texas Crim. Rep., 198; Lawrence v. State, 2 Texas Crim. App., 479. This is the settled rule where the court has not the authority to try the case. Cases supporting this proposition are also collated in Emery v. State, supra.

Under all these authorities the proposition may be safely asserted, that if the court had not acquired jurisdiction of the person or the subject matter, the judgment will be void. Article 4632, Revised Statutes, as amended by the Legislature, 1913, says, that no judgment for divorce shall be granted in this State unless the party seeking the divorce is a bona fide inhabitant for twelve months in the State, and in the county six months. The evidence in this case demonstrates that appellant had not been in the State but nine months at the time the suit was instituted, therefore the court was without jurisdiction as to his person and subject matter, and, of course, could not render a judgment.

There is another case I might notice in this connection against the proposition that the judgment is only voidable and can not be attacked in collateral proceedings. Ex parte Parker, 35 Texas Crim. Rep., 12. It is unnecessary to review that case at length or to state the matters in full. Parker was tried in Nueces County and convicted of homicide, his punishment being confinement in the penitentiary for the term of his life. In that case it was held that a writ of habeas corpus could be used to attack the validity of the judgment of the court, and that it is competent, notwithstanding the recitals in the judgment, to go behind the judgment and probe into the very truth of the matter as

to whether an act done during the term was in fact done during the time recited by the record. Parker had been convicted, and the contention was made on trial of the writ of habeas corpus that the verdict was rendered after the adjournment by law of the term at which he was convicted  The writ was granted, the case tried, and the matter investigated, all of which is shown by the report of the case. These matters I have set out a little more fully than I anticipated. One of the main questions in the instant case turned on whether the wife of the defendant, who testified in this case, was a competent witness against him. The majority opinion is based upon the theory that the court did not have jurisdiction; that is, appellant had not been a citizen for twelve months, and, therefore, the testimony of appellant to that effect before the court granting a divorce was false and constituted a basis for perjury. If the court had jurisdiction, it was not perjury, because appellant would have lived the requisite twelve months in Texas before exhibiting his application for a divorce. The perjury is predicated on appellant's testimony in the divorce case to the effect that he had lived in Texas the necessary statutory time in order to get the divorce. If it was true he had been a citizen of Texas as required by statute, the State has no case; there could be no perjury. The majority opinion holds that his testimony was false in showing jurisdictional facts; that the court had no jurisdiction to try the divorce case, or to entertain it, and yet it holds that the party is guilty of perjury in a proceeding over which the court had no authority or jurisdiction. If the judgment was valid, the divorce was properly granted and the wife could testify, because no longer his wife  Her competency as a witness against her husband is predicated alone upon the proposition that appellant's testimony was the basis of the judgment. This being true, the wife was not divorced. There could be no divorce under the facts. She still labored under the incapacity as a witness, being the wife of the accused. Objection was interposed on the trial of the perjury case for the reasons stated. The court below should have sustained these objections, and this court should have reversed the case because the court below did not sustain objections to the wife's competency as a witness. The wife can not testify in Texas against her husband in perjury cases. She did not testify in the divorce case. She was not in Texas; she was in New York. The judgment is a nullity, first, because the court had no jurisdiction of the person, and his voluntary appearance under all the authorities did not confer jurisdiction. Consent could not confer jurisdiction. The sine qua non was the requisite residence. In order to have jurisdiction in this case the facts must be true that appellant had lived in Texas the necessary time. Second, it had no jurisdiction of the subject matter. The divorce proceedings were not maintainable in the District Court until the party had lived here the necessary time. The court did not have jurisdiction of the subject matter. There was no cause of action, and none could exist until the expiration of the twelve months; and, third, not having jurisdiction of the person or subject matter, the court was powerless to ren-

der a judgment on the facts. The authorities all sustain these propositions, so far as I am aware, and the question of the judgment being voidable does not enter into this case. It was void.

These are some of the reasons upon which I base my conclusions that the majority opinion is wrong in the affirmance.

I therefore respectfully enter my dissent.