**PRICHARD v. NELSON et al.**

No. 5077.

Circuit Court of Appeals, Fourth Circuit.

July 23, 1943.

Glenn W. Ruebush, of Harrisonburg, Va., for appellant.

A. M. Prichard, in pro. per., and George S. Wallace, of Huntington, W. Va. (Virginius R. Shackelford, of Orange, Va., on the brief), for appellees.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action brought in the District Court of the United States for the Western District of Virginia, by A. M. Prichard, the appellant, herein referred to as the plaintiff, against the appellees, C. P. Nelson and Mary R. Nelson, herein referred to as the defendants.

The plaintiff is a citizen of the State of Virginia and the defendants are citizens of the State of West Virginia. The object of the action was to recover from the defendants certain sums claimed to be due on a bond executed by them guaranteeing the contract of one H. A. Robson, made with the plaintiff. Answer was filed by the defendants and certain stipulations were entered into as to the facts. A motion was then made on behalf of the defendants for a summary judgment upon the pleadings and the stipulations. After argument, the judge below on December 9, 1942, filed a written opinion holding for the defendants and granting the motion. Judgment was entered for the defendants. A petition for re-hearing was filed by the plaintiff and on December 30, 1942, the district judge filed an opinion denying the motion for re-hearing and refusing to set aside the judgment. From this action this appeal was brought.

There is no dispute as to the material facts which, as found by the judge below, are as follows:

"On November 13, 1928, the plaintiff loaned to one H. A. Robson, now deceased, certain bonds of the United States of a par value of $65,000.00, due in 1954, and bearing 4 per cent interest, under an agreement that Robson would return the bonds on or before five years after the date of the loan, and would meanwhile pay to the plaintiff the interest coupons on the bonds as they matured, plus an additional 2 per cent of the par value of the bonds. To secure performance of this contract, Robson assigned to the plaintiff two contracts of lease, one of which was upon a one-half interest which Robson owned in certain property and from which the rental on such interest was $250.00 a month, and the other on property owned by Robson and leased for $75.00 a month. Robson also executed a deed of trust upon his interest in the properties covered by the leases.

"That on November 19, 1930, the plaintiff loaned Robson additional bonds of the same nature of the par value of $30,000.00 upon the same terms, to be returned in two years. At that time Robson assigned to plaintiff a life insurance policy in the face amount of $50,000.00 as collateral security for any and all obligations due to plaintiff. And as additional security for this second loan executed a deed of trust on Robson's one-third interest in certain lands in Fayette County, West Virginia.

"That during the summer of 1933, the plaintiff became doubtful as to the security for the $65,000.00 loan and threatened to take action for the return of the bonds unless further security was given. To meet this demand Robson, as principal, and Mary R. Nelson and C. P. Nelson (the defendants), as sureties, on August 7, 1933, executed and delivered to plaintiff a bond in the penalty of $77,500.00 conditioned upon the return, on or before January 1, 1934, of the $65,000.00 of bonds loaned to Robson on November 13, 1928.

"That, when the agreed time came for the return of the bonds the plaintiff made no demand for their return nor did he extend the time, but permitted Robson to retain them because of the belief that if he pressed the matter and enforced the deeds of trust he (plaintiff) would probably have to buy in the properties on which they were given, which he did not wish to do."

There were a number of payments made to plaintiff out of the proceeds of Robson's property that was sold and plaintiff purchased some bonds in the open market with the money so received. On May 8, 1939, Robson died and the plaintiff collected the sum of $50,669.30 from the life insurance policy assigned to him as security on the contract and again the plaintiff purchased bonds on the open market. The plaintiff had received rents assigned to him aggregating $325.00 a month, until June, 1939, after which the plaintiff received rents on one of the properties of $250.00 a month.

In the meantime Robson had become involved as a bondsman for the Huntington Bank & Trust Company to secure certain deposits made in said bank and, the bank having failed, a suit was begun in the Circuit Court of Cabell County, West Virginia, taking the form of a general creditors suit to subject the lands of Robson to the liens thereon. This litigation became complicated and had many ramifications and the plaintiff on May 6, 1935, filed an answer to the amended bill in this suit in which he set out his claim against Robson. The defendants were parties to this suit because of certain transfers made to them by Robson. Pending the settlement of the litigation Robson died (May, 1939) and the suit was revived in the name of the heirs at law, the executor of the estate of Robson and the several devisees under his will. On March 7, 1940, a decree was entered referring the matter to a commissioner with directions to state and report, among other things, an account of all the property of the said Robson and of the liens thereon and their priorities. The commissioner proceeded with the execution of this reference and among the claims presented and upon which he heard evidence was that of the plaintiff. Prior to this time plaintiff had received (in 1935) the $30,000.00 from the sale of Robson's interest in the Fayette County land and (in 1939) the $50,669.30 from the insurance on Robson's life. The claim which he presented to the commissioner was for the balance which he alleged was due him. In other words the claim asserted by the plaintiff against Robson's estate was based on the same figures and the same method of bookkeeping as the claim now asserted against defendants here as Robson's sureties.

The report of the commissioner considered at length the claim asserted by the plaintiff against Robson and the objections raised thereto and recited the facts about the loan of the bonds, the payments made on account thereof and all the various transactions in connection therewith and found that the amount due the plaintiff from Robson by virtue of the contract, which the defendants gave bond to secure, was $22,029.34 as of May 15, 1941. Exceptions to the commissioner's findings were taken by the plaintiff but these findings were sustained by a decree of the Circuit Court of Cabell County entered July 1, 1941, and judgment was entered, against the estate of the said Robson, in the amount found by the commissioner. By a further decree of September 24, 1941, the court directed the amount of the plaintiff's debt to be paid out of funds in the hands of the Special Receiver of the Robson estate and on the same date the sum of $20,205.16 was paid to plaintiff's attorney, the plaintiff having collected on rents $2,295.00 to be applied on the judgment. A receipt was given in full settlement of the judgment against Robson's estate.

As was said by the judge below in his able and well considered opinion:

"It is seen that all questions as to the liability of Robson growing out of this transaction have been heard and determined by a court of competent jurisdiction. The judgment rendered by the West Virginia court was not appealed from; the amount adjudged due was paid and accepted. The question is whether Prichard can now maintain an independent suit against Robson's sureties in an effort to collect from them the remainder of the amount which he unsuccessfully asserted against Robson. So far as Robson's estate is concerned the judgment of the West Virginia court is certainly final. In that proceeding there was a definite and final determination of the amount which Robson owed and this amount was paid and accepted as being in full settlement of the judgment. Our question in the instant case may then be re-stated thus: can a creditor collect from a surety a sum in excess of that which has been judicially determined to be the amount owed by the principal debtor?"

■ It is contended on behalf of the plaintiff that the decree giving judgment against the estate of Robson was not in the form prescribed in the West Virginia Statute and was therefore void; but the plaintiff did not except to the form of the judgment and it was paid in full. Coming at this late date such objection to the form of the judgment is trivial and not worthy of consideration. At the most the judgment would not be void, but voidable. A judgment rendered under such conditions, unless reversed or annulled in a proper proceeding prosecuted directly for that purpose, is not open to contradiction or impeachment in respect to its validity except for fraud in its procurement. See 34 C.J., 511, 514, 563.

■ It is also well settled that a party who has secured the rendition of a judgment or has taken the benefits thereof, as did the plaintiff here, is thereafter estopped to attack the validity of the judgment. 31 Am.Jur. page 180; Merritt's Lessee v. Horne, 5 Ohio St. 307, 67 Am.Dec. 298, 301; Laird v. State, 79 Tex.Cr.R. 129, 184 S.W. 810, 3 A.L.R. 535.

■ The defendants gave bond to insure the carrying out of Robson's contract with the plaintiff. All matters in difference between the plaintiff and Robson growing out of the contract were litigated in a court of competent jurisdiction and all claims that the plaintiff had against Robson were settled in full and receipted for. It necessarily follows that if all obligations of the principal Robson to the plaintiff were settled there can be no obligation of the bondsmen, the defendants here, to the plaintiff. The plea res adjudicata is unquestionably good. The defendants insured Robson's compliance with his contract and Robson's estate has settled in full for all obligations under the contract and any liability of the bondsmen is fully extinguished. Aetna Casualty & Surety Co. v. Leroy Abbott, 4 Cir., 130 F.2d 40; National Bondholders Corp. v. Seaboard Citizens Nat. Bank, 4 Cir., 110 F.2d 138; Portland Gold Mining Co. v. Stratton's Independence, 8 Cir., 158 F. 63, 16 L.R.A., N.S., 677; Gill v. Morris, 11 Heisk., Tenn., 614, 27 Am.Rep. 744; Spencer v. Dearth, 43 Vt. 98; 21 R.C.L. 1085; United States v. Allsbury, 4 Wall. 186, 18 L.Ed. 321; Central Trust Co. v. Manly, 5 Cir., 100 F. 2d 992; Norris v. Pollard, 75 Ga. 358; State v. United States Guarantee Co., 207 N.C. 725, 178 S.E. 550; Chozen Confections v. Johnson, 218 N.C. 500, 11 S.E.2d 472; Gurnee v. Bausemer Co., 80 Va. 867; and annotation 5 A.L.R. 594 citing various cases.

In Aetna Casualty & Surety Co. v. Abbott, supra [130 F.2d 42], Judge Parker, of this court, said: " * * * The answer is that the facts upon which coverage depends were involved in that action, and the facts asserted here as a defense with respect to coverage were asserted there as a defense to a recovery against the bank. Even though there be a difference of issues, defendant is bound as to facts actually litigated and determined. National Bondholders Corp. v. Seaboard Citizens Nat. Bank, supra."

Cases cited on behalf of the plaintiff are not in point or controlling.

The judgment of the court below is accordingly

Affirmed.