**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**BROWNING–FERRIS MACHINERY COMPANY, John A. Petty and Joe J. Wilson, Appellees.**

**No. 15493.**

United States Court of Appeals
Fifth Circuit.

Dec. 9, 1955.

Ralph W. Malone, Dallas, Tex., Malone, Lipscomb & Seay, Dallas, Tex., for appellant.

L. F. Burke, Longview, Tex., Neth L. Leachman, Neth L. Leachman, Jr., Leachman, Gardere, Akin & Porter, Dallas, Tex., for appellee, Browning-Ferris Machinery Co.

Hurst & Burke, Longview, Tex., for John A. Petty.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

BROWN, Circuit Judge.

A case so simple that master strategists could not possibly have planned it into complexity has inadvertently become so snarled that we must painstakingly unthread the backlash to assure the result so evidently required.

Browning-Ferris sued Petty, the prime contractor, Wilson, the subcontractor, and Indemnity Insurance, surety, on a Miller Act, 40 U.S.C.A. § 270, bond for unpaid rental charges for machinery used on a Government contract. Execution of the bond and the giving of the 90-day notice by the materialman to the prime contractor, 40 U.S.C.A. 270b (a), was admitted.[1] So the area of controversy was confined to the defense that (a) the machinery was in subcontractor's hands under a lease-purchase, rather than a rental, contract, and (b) the machinery had been used on the job 5 days only rather than 38 as claimed. On the close of all of the evidence, the Court denied the motions of all parties for a directed verdict and submitted the case to the jury by a charge to which no exceptions were taken.

It was here that the trouble started. Despite his denial of all defendants' motions for directed verdict then just immediately announced, the Court in his charge instructed the jury to find for Petty, prime contractor.[2] But this the jury did not do. It returned a verdict *for* the plaintiff, but, literally, against none.[3] The final judgment under review here adjudged recovery against Wilson, the subcontractor, and the surety but in favor of Petty.[4]

Except for their respective motions for directed verdict, all declined, no one, up to this point, made any objection to the actions of the Trial Court. This era of contentment ended shortly when new, separate counsel appeared for the surety contending that the rendered judgment could not properly stand against the

---

1. The fact of giving and receiving the written notice was admitted; the issue of its timeliness depended wholly upon the period of time in which the machinery was on the job site, i. e., 90 days from the date of the last use.

2. "The contractor, Petty, is not liable on this matter, and, you will include in your verdict a verdict for Petty. If you will find an amount it will be against Mr. Wilson."

3. "We, the jury, find the plaintiff due 38 days @ $50.00 per day a total of $1900.-00 * * * Foreman."

4. " * * * it is further ordered * * * that under the verdict of the jury and the undisputed evidence, plaintiff, * * * take nothing * * * against defendant, * * * Petty, individually, and that he go hence without day * * *."

surety since the principal .(Petty) had been discharged.[5] These motions denied, this appeal ensued, the surety now urging that the judgment should be reformed to discharge the surety if the principal, Petty, remains discharged; that the judgment be reformed to render judgment for plaintiff against Petty, and that the surety be given judgment over against Petty and Wilson.

■ It is clear, indeed conceded by all except Petty, that the instruction to the jury and the judgment dismissing Petty was wrong. The suit was on the bond in which Petty was a principal obligor. If, on the factual basis, the surety was liable, so was the principal. But if wrong, what are the consequences?

The surety urges, albeit somewhat faintly and most likely as a makeweight for reformation of the judgment to hold Petty equally liable, that on a familiar rule of suretyship where the principal has been discharged, it is an automatic release of the surety.[6]

■■ No contention is made here, or below, that on the facts and the jury verdict there was any real, meritorious basis for discharging the surety. The plea, thus made, is the harsh one that since the Trial Court committed patent error,

we must compound it by one of our own. The law is no such strait jacket, either generally, or in a Miller Act situation specifically. That Act, and bonds furnished under it, present matters for application of federal law, Continental Casualty Company v. Schaefer, 9 Cir., 173 F.2d 5; Liebman v. United States, 9 Cir., 153 F.2d 350, the underlying approach of which is that, "technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute," Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206. Fleisher Engineering & Construction Co. v. United States, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12. Justice requires that plaintiff, already long delayed in the amounts so clearly due through circumstances wholly uninvited by it, obtain the benefits of the judgment against the surety and it will be affirmed.

■ It seems equally plain that the judgment dismissing Petty was wrong and that the surety, whose rights are likely to be adversely affected if it stands, has taken adequate, timely steps for review by us. The point was plainly reserved in the motions for new trial and to amend and reform the judgment. The fact that the surety's counsel [7] did

5. He sought: (1) a new trial for error of the Court in discharging the principal and allowing recovery against surety when the principal was discharged; (2) to amend and correct the judgment under Rule 59(e), 28 U.S.C.A., by striking from the judgment recovery for plaintiff against surety and the discharge of Petty; and (3) to file a proposed amended answer requesting judgment over against Petty if the surety were held liable.

6. They cite: 50 Am.Jur., Suretyship § 208, p. 1041: "Applying the doctrine that the extent of liability of a surety is measured by the liability of the principal, it is the rule, in the absence of statutory provision to the contrary, that where an action against both principal and surety fails as to the former, the surety is for that reason discharged and judgment cannot be obtained against him. Thus judgment against surety should not be rendered where the court is not in position to enter judgment against his

codefendant, the principal, because the latter has not been properly served, or has been dismissed from the suit, or *has obtained a verdict in his favor.*" (Emphasis theirs.)

Also Texas cases: Muenster v. Tremont Nat. Bank, 92 Tex. 422, 49 S.W. 362; Woldert v. Durst, 15 Tex.Civ.App. 81, 38 S.W. 215; Moore v. Belt, Tex.Civ. App., 206 S.W. 225; Wills v. Tyer, Tex.Civ.App., 186 S.W. 862; Girard Fire & Marine Ins. Co. v. Koenigsberg, Tex.Civ.App., 65 S.W.2d 783; Stafford v. Lawyers Lloyds of Texas, Tex.Civ. App., 175 S.W.2d 461.

Likewise Federal cases: Phelps v. Dawson, 8 Cir., 97 F.2d 339, 116 A.L.R. 1343; Chisholm v. House, 10 Cir., 183 F.2d 698; Atchison v. Gulf Refining Co., 5 Cir., 174 F.2d 476; Prichard v. Nelson, 4 Cir., 137 F.2d 312; Central Trust Co. v. Manly, 5 Cir., 100 F.2d 992.

7. Trial counsel acting jointly for all defendants did not except since (a) this

not except to the Court's charge (footnote 2 supra) discharging Petty is not an acquiescence in the subsequent erroneous judgment, specifically excepted to, since the jury, though instructed to do so, failed to return a verdict for Petty [8] and the judgment recitation is incorrect on the fact of such a verdict, or that the evidence was undisputed in favor of Petty. Disregarding all that occurred prior to the retirement of the jury, the judgment as entered was wrong in fact. The surety promptly and sufficiently pointed this out.

Thus far it is simple—the judgment for Petty was wrong and must be reversed. The serious question is whether we can now order the Trial Court to do what ought to have been done or must we send it back for a new trial as to Petty?

■ We cannot direct the entry of such a judgment on the theory that the Trial Court, upon the plaintiff's motion for directed verdict, should have done so below, for there are issues of fact requiring jury decision. That is not decisive, however, since we think that there has already been a jury verdict adverse to Petty on all of the issues he was entitled to have submitted. It must be remembered that the liability here asserted is that on the bond to respond for unpaid claims against subcontractors. Petty's liability flowed therefore from that

imposed on Wilson, the subcontractor. Where a subcontractor is involved, as here, the liability of the prime contractor, as principal, is derivative and the issues to be submitted, whether specially or by general verdict, relate only to the subcontractor.[9] As framed by the pleadings and as made by the evidence, the controversy was narrowed to the simple one of whether Wilson had purchased rather than rented, and if rented, the extent of the use on the federal job site.

■ Had the Trial Court, therefore, not given the erroneous direction freeing Petty, there would have been nothing submitted not already in the charge. It would have been precisely as it was concerning the surety, since under the form of instructions used the jury was not charged, nor was it necessary to do so, to find for the plaintiff and *against* the surety. Considering the broad scope of the Trial Court's discretion and the elastic flexibility of the form of submission of a case to the jury, the charge of the Court and the verdict returned constitute, in a very real and practical sense, an adequate special verdict, or a general one with special interrogatories under Rule 49(a), (b) revealing on their face consistency between the general and the special, and clear-cut, categorical answers on the crucial ultimate fact issues.[10]

released one of his clients, Petty, altogether, and (b) he genuinely, though mistakenly thought that under the principles discussed footnote 6, supra, a verdict and judgment thereafter against surety alone would irretrievably be a nullity.

8. Whether this was, despite the earlier denial of motion for instructed verdict, the equivalent of a directed verdict for Petty and whether, if such, the Court would be free to treat it as done since the jury's act is largely ministerial, or whether, on the other hand, this vitiated the judgment for Petty altogether, see, e. g., Hartman v. White Motor Co., D.C.Mich., 12 F.R.D. 328; Garfield Anilene Works, Inc. v. Zendle, 3 Cir., 43 F.2d 537; Colonell v. Goodman, D.C. Pa., 78 F.Supp. 845, 849, affirmed 3

Cir., 169 F.2d 275; 39 Am.Jur., New Trial, § 127 p. 136, are questions we need not decide. We do not reverse because the jury failed to comply; but the jury's failure made the judgment incomplete and inaccurate.

9. The 90-day notice to prime contractor issue frequently open for jury decision between materialman and prime contractor depended here entirely on the time of Wilson's use.

10. What the jury was to determine and how it was to reflect its decision was covered altogether by these excerpts:

"So, it is for your determination, Gentlemen, as to how long that tractor was kept at Corsicana for that job, whether it was used or not is quite immaterial. How *long* was it kept there for that job? Not elsewhere, but at Corsicana?

Assuming that Petty can still insist that he was entitled to a jury trial which he induced the Court not to give him, that right was related to the situation presented and whether submitted generally or specially, the issues were, and had to be, those actually determined by the jury. On the basis of the implied finding of a rental, not a sales, agreement, the jury found, with precision, the actual use on the job site for 38 days and the agreed daily rental of $50.00. Petty, on this record, could have requested no others and these specific findings, together with the general finding *for* the plaintiff, demonstrated that on all issues the jury found adversely to Wilson. That was the equivalent of a finding against Petty. So viewed, we treat it as though the verdict spelled out by name the parties and all of the issues of dispute which were necessarily and unavoidably determined. See Bolan v. Lehigh Valley R. Co., 2 Cir., 167 F.2d 934; Gulf Refining Co. v. Fetschan, 6 Cir., 130 F.2d 129. Petty has had, in effect, a jury trial.[11] He is not entitled to another one.

■■ The surety also urges that the Trial Court should have permitted the filing of a cross claim, F.R.C.P. 13(g). That this comes after judgment would not bar action since Rule 15(b) gives substantial latitude to amend even then. We mean always to infuse vitality in Rule 15. Copeland Motor Co. v. General

Motors, 5 Cir., 199 F.2d 566; Grandey v. Pacific Indemnity Co., 5 Cir., 217 F.2d 27; Gifford v. Wichita Falls, 5 Cir., 224 F.2d 374. We cannot hold, however, that the judge's refusal exceeded his permissible discretion since, unlike Petty's position *vis-a-vis* the plaintiff in which all issues open to Petty were resolved by the existing verdict, the issues, if any, solely between surety and principal were no part of the case either in evidence, submission, or verdict.[12] Additionally, the surety will have this opportunity on remand.

■ Accordingly, the judgment in favor of the use plaintiff, Browning-Ferris Machinery Company, against Joe J. Wilson and the surety, Indemnity Insurance Company of North America, is affirmed; so much of the judgment dismissing John A. Petty is reversed and remanded with directions to the Court to enter judgment against John A. Petty; and in those proceedings below the surety, upon payment to the plaintiff, may, if it sees fit, file in its answer a cross claim against Petty for exoneration and indemnity and for such further and other proceedings consistent herewith, United States for Use and Benefit of Wheeler v. American Surety Co., 2 Cir., 142 F.2d 726.

Affirmed in part; Reversed and remanded in part, with directions.

"You can figure the *number* of *days* that you find at Fifty Dollars per day, and return a verdict for the plaintiff for such *number* of *days* at that amount per day as you find it was kept there for that job.

\* \* \* \* \*

"You \* \* \* write your verdict \* \* \* saying, 'We find for the defendant', if you so find; or, 'We find for the plaintiff for' such number of dollars as you find that to be, signing your verdict by your foreman."

Verdict, see footnote 3, supra, was for 38 days @ $50.00 per day.

11. Defendants' single counsel argued to ■■

the jury for all. On these undramatic issues he could not have argued any more effectively for Petty than he did for Wilson. For surety and Petty the escape depended on Wilson. We cannot assume that with his chance to speak for Wilson and surety, he withheld contentions or reduced his forensic efforts because he was not declaiming in Petty's name as well.

12. Of course, the issues of Wilson's liability and the imputed liability of Petty and surety derived therefrom and that of Petty, as principal and surety, as surety, on the bond are foreclosed by our decision.