Major LEWIS, d/b/a Major Lewis Livestock Auction Sales Company of Conway, Arkansas, Plaintiff,

v.

O. H. GOLDSBOROUGH, Merchants Clearing, Incorporated, W. L. Hammock, and National Surety Corporation, Defendants.

No. LR 63 C 94.

United States District Court
E. D. Arkansas, W. D.
Oct. 16, 1964.

George F. Hartje,. Jr., Conway, Ark., for plaintiff.

J. S. Daily, Fort Smith, Ark., for defendants.

YOUNG, District Judge.

Jurisdiction in this action by Major Lewis, d/b/a Major Lewis Livestock Auction Sales Company of Conway, Arkansas, the plaintiff, against O. H. Goldsborough, Merchants Clearing, Incorporated, W. L. Hammock, and National Surety Corporation, defendants, is based upon a bond required under the "Packers and Stockyards Act," 7 U.S.C.A. § 204. Hartford Accident and Indemnity Company v. Baldwin, 262 F.2d 202 (8th Cir. 1958).

THE FACTS

1. The bond in question provides:

"KNOW ALL MEN BY THESE PRESENTS that we MERCHANTS CLEARING COMPANY, INC. of Fort Smith, Arkansas, as Principal and NATIONAL SURETY CORPORATION of NEW YORK, as Surety are held and firmly bound unto W. L. Hammock of Fort Smith, Arkansas . . . as trustee for all persons who may be damaged through the breach of this bond, as obligee, in the sum of . . . $50,000 . . . for the payment whereof to the obligee we bind ourselves . . ..

NOW, THEREFORE, the condition of this bond is such that—If the said Principal, acting in the capacity of broker or clearing agency, and thereby being responsible for the financial obligations of other registrants, viz:

W. H. Bodenhamer
B. G. Godwin
Thomas W. Tally

shall (a) pay, when due, to the person or persons entitled thereto the purchase price for all livestock purchased by such other registrants at a public stockyards as defined in the Act of Congress known as the Packers and Stockyards Act, 1921, as amended . . .."

2. O. H. Goldsborough, Spiro, Oklahoma, was, at all times material herein, a dealer registered under the Act with the Secretary of Agriculture to buy and sell livestock in commerce for his own account. He was added as a registrant to the above bond by a rider dated February 27, 1957.

3. The plaintiff Major Lewis, d/b/a Major Lewis Livestock Auction Sales, Conway, Arkansas, was, at all times material herein, an individual registered under the Packers and Stockyards Act with the Secretary of Agriculture as a market agency selling livestock in commerce on a commission basis, and as a dealer buying and selling livestock in commerce for his own account.

4. The defendant Merchants Clearing, Incorporated, Fort Smith, Arkansas, a corporation, is a market agency which at all times material herein was registered with the Secretary of Agriculture to furnish clearing services. As part of its registration it filed with the Packers and Stockyards Division of the United States Department of Agriculture the bond above set out.

5. The defendant National Surety Corporation is the corporate surety on the bond executed by Merchants Clearing, Incorporated.

6. The defendant W. L. Hammock is the trustee listed in the bond executed by Merchants Clearing, Incorporated.

7. O. H. Goldsborough, who was known as a bonded buyer to Major Lewis, d/b/a Major Lewis Livestock Auction Sales, Conway, Arkansas, had been purchasing cattle from Major Lewis at his stockyards prior to October 30, 1961, and in each instance issued his personal check therefor. Goldsborough was also listed as a bonded buyer on the publication issued by the Department of Agriculture from time to time.

8. On October 30, 1961, O. H. Goldsborough purchased eighty head of cattle from Major Lewis Livestock Auction Sales and paid for the same by a draft drawn on Merchants Clearing, Incorporated.

9. On October 31, 1961, O. H. Goldsborough purchased eighty-one head of cattle at the Major Lewis Livestock Auction Sales stockyard, a posted stockyard under the Packers and Stockyards Act.

The total purchase price was $9,352.16. In purported payment of such cattle, Goldsborough gave his personal check (No. 7145) dated October 31, 1961, drawn on the First State Bank, Wister, Oklahoma. The check was dishonored by the bank and returned to Major Lewis on or about November 7, 1961, whereupon it was once more deposited for collection. The check was again returned unpaid on November 15, 1961.

10. On November 1, 1961, Goldsborough presented to Merchants Clearing, Incorporated, a purchase invoice from Major Lewis, d/b/a Major Lewis Livestock Auction Sales, for eighty-one head of cattle, marked "Paid #7145" and a check was issued to Goldsborough by Merchants Clearing, Incorporated, in the amount of $9,352.16. Thereafter Goldsborough resold the cattle. The proceeds of the resale were received by Merchants Clearing, Inc., and credited to Goldsborough's account. Merchants Clearing, Incorporated, collected a thirty cent per head clearing charge for its service as clearor in connection with the purchase and resale as provided by the tariff filed with the Packers and Stockyards Division of the Department of Agriculture.

11. In a letter dated November 17, 1961, addressed to the trustee, W. L. Hammock, under the bond, plaintiff demanded payment for the cattle. On January 8, 1962, J. Fred Green, Sallisaw, Oklahoma, attorney for Merchants Clearing, Incorporated, answered, denying liability under the terms of the bond on the basis of the fact that the purchase was made at a place other than the Fort Smith Stockyards.

12. On January 10, 1962, plaintiff filed a reparation proceeding [1] with the Secretary of Agriculture pursuant to 7 U.S. C.A. §§ 209 and 210.

13. On March 13, 1962, Merchants Clearing, Incorporated, served a written notice upon plaintiff Major Lewis, demanding that, in accordance with Ark.

---

1. "Reparation proceeding" is the term applied to the administrative proceeding authorized to be held by the Secretary or Agriculture by 7 U.S.C.A. § 209 for ascertaining the liability of a dealer or market agency under certain circumstances.

Stats. §§ 34-333 and 34-334, suit be instituted against Goldsborough within thirty days and informing Major Lewis that upon his failure to do so Merchants Clearing, Incorporated, would consider itself discharged as a surety on the bond.

14. On July 6, 1962, an oral hearing on the reparation proceeding was held in Fort Smith, Arkansas, resulting in a decision and order of the Judicial Officer of the Department of Agriculture under date of March 20, 1963, directing the defendants to pay to plaintiff the sum of $9,352.16, together with interest at the rate of 5% from December 1, 1961.

15. The complaint in this action, filed August 2, 1963, asks for judgment on the bond for $9,352.16, plus interest at 5%, and for a reasonable attorney's fee. By their answer Merchants Clearing, Incorporated, and National Surety Corporation seek judgment over against Goldsborough.

16. By stipulation between Major Lewis and Merchants Clearing, Incorporated, National Surety Corporation, and W. L. Hammock—O. H. Goldsborough filed no answer and did not appear—the case was presented to this Court upon the record made at Fort Smith before the referee in the reparation proceedings.

## ISSUES

1. The defendants contend that the facts alleged in the complaint, as well as those stated in the plaintiff's reparation complaint heretofore filed with the Department of Agriculture and the Secretary thereof, do not constitute a violation, either by act or omission on the part of any one of these defendants, of Title 7 U.S.Code, §§ 205, 206, 207, or 208, or of any order of the Secretary of Agriculture made under that Title.[2]

2. The defendants contend that Merchants Clearing, Incorporated, did not act in the capacity of "broker or clearing agency" with respect to the particular transaction of O. H. Goldsborough and therefore deny liability therefor.

3. Merchants Clearing, Incorporated, National Surety Corporation, and W. L. Hammock plead the provisions of Ark. Stat.Ann. §§ 34-333 and 34-334 (Repl. 1962), and contend that the defendants are discharged because of the failure of the plaintiff to institute suit within thirty days from March 13, 1962, the date of the written demand by Merchants Clearing, Incorporated.

4. Merchants Clearing, Incorporated, National Surety Corporation, and W. L. Hammock also plead estoppel and laches in that the plaintiff was guilty of unreasonable delay in notifying them of the dishonor of Goldsborough's check.

## CONCLUSION

No cause of action has been shown against W. L. Hammock. He, evidently, was made a nominal party defendant because of his status as trustee in the bond.

The defendants' contention with respect to issue No. 1 above, that no violation, either by act or omission on their part, of Title 7 U.S.C.A. §§ 205, 206, 207, or 208, has been shown, arises as a result of the fact that the plaintiff has introduced into evidence the reparation order issued by the Secretary of Agriculture, and because of the peculiar wording of 7 U.S.C.A. § 209, which provides as follows:

"(a) if any stockyard owner, market agency, or dealer violates any of the provisions of sections 205-207 or 208 of this title, or of any order of the Secretary made under sections 201-203 and 205-217a of this title, he shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of such violation.

---

2. § 205 requires each stockyard owner and market agency to furnish upon reasonable request and without discrimination reasonable stockyard services; § 206 provides that all rates or charges shall be just, reasonable and nondiscriminatory; § 207 has to do with the posting and changing of schedule of rates; and § 208 requires each stockyard owner to observe and enforce just, reasonable and nondiscriminatory regulations and practices in general.

"(b) Such liability may be enforced either (1) by complaint to the Secretary as provided in section 210 of this title, or (2) by suit in any district court of the United States of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

Title 7 U.S.C.A. § 210 provides as follows:

"(a) Any person complaining of anything done or omitted to be done by any stockyard owner, market agency, or dealer (hereinafter in this section referred to as the "defendant") in violation of the provisions of sections 205-207 or 208 of this title, or of an order of the Secretary made under sections 201-203 and 205-217a of this title, may, at any time within ninety days after the cause of action accrues, apply to the Secretary by petition which shall briefly state the facts, whereupon the complaint thus made shall be forwarded by the Secretary to the defendant, who shall be called upon to satisfy the complaint, or to answer it in writing, within a reasonable time to be specified by the Secretary. * * * "

■ Thus it is seen that the provision authorizing the Secretary of Agriculture to hold reparation proceedings does not refer to § 204 under which the Secretary is authorized to require bonds from every market dealer and agency. A close reading of the Packers and Stockyards Act in its entirety convinces this Court that Congress did not intend to give the Secretary of Agriculture jurisdiction in a reparation proceeding under § 210 to order a surety on a bond issued under § 204 to make good the purchase price of cattle. Logic and reason support this conclusion for no technical knowledge of the operation or problems surrounding the operation of a livestock auction is required to determine a surety's liability for the purchase price of cattle sold at stockyard, while a technical knowledge of the problems and operations of a stockyard or market agency is required of the services directed to be furnished and the discriminatory practices prohibited by §§ 205-208. McClure v. E. A. Blackshere Company, 231 F. Supp. 678 (D.Md.1964). Therefore, in reviewing the record here presented, this Court has given no weight to the findings or orders of the judicial officers of the Department of Agriculture.

Under issue No. 2 above, the defendants contend (a) that the tariff approved by the Secretary of Agriculture, and on file and posted at all places at which its bond was on file and posted, clearly and expressly limited its obligations with respect to clearee registrants to paying and collecting for livestock bought and sold by the clearee on the Fort Smith Stockyards, and (b) that the plaintiff at no time prior to the transaction in issue had received from Merchants Clearing, Incorporated, any notice or representation whatsoever that Goldsborough was a clearee registrant under its bond or that Goldsborough had any authority to bind the credit of Merchants Clearing, Incorporated, in any of his purchase transactions at Conway.

■ The answer to both of these contentions is contained in the language of the bond which simply provides coverage for purchases made by a registrant at a public stockyard. Nothing in the bond indicates that its provisions are in any way restricted by a tariff filed by a market agency, nor is its liability conditioned upon a representation from the market agency that the registrant is a clearee under its bond or that the registrant has authority to bind its credit.

■ The facts show that Goldsborough was known as a bonded buyer at the plaintiff's stockyard, that his name was published by the United States Department of Agriculture as a bonded dealer and buyer, and that plaintiff's stockyard was a public stockyard within the meaning of the Packers and Stock-

yards Act. The Court must therefore conclude that Goldsborough made his purchases at the plaintiff's stockyard in his capacity as a registrant under defendants' bond. To hold otherwise would be to infer that Goldsborough was violating the criminal provisions of the Packers and Stockyards Act by unlawfully holding himself out as a dealer,[3] and the Eighth Circuit has already held such an inference under such circumstances should not be made. Hartford Accident and Indemnity Company v. Baldwin, 262 F.2d 202 (8th Cir. 1958).

With respect to the contention made under issue No. 3 above, the defendants point to Ark.Stat.Ann. §§ 34–333 and 34–334 (Repl.1962) which provide as follows:

"Ark.Stat. § 34–333. Any person bound as security for another in any bond, bill or note, for the payment of money or the delivery of property, may at any time after action hath accrued thereon, by notice in writing, require the person having such right of action, forthwith to commence suit against the principal debtor, and other party liable.

"Ark.Stat. § 34–334. If such suit be not commenced within thirty [30] days after the service of such notice, and proceeded in with due diligence in the ordinary course of law, to judgment and execution, such surety shall be exonerated from liability to the person notified."

■ In a diversity action wherein the federal courts are obligated to apply state law under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, the Eighth Circuit in Madison County Farm. Ass'n v. American Emp. Ins. Co., 209 F.2d 581 (8th Cir. 1954) held that the above statutes exonerated or discharged a fidelity surety where the creditor failed to bring suit against the debtor within the thirty day period after service of the demand. However, jurisdiction in the action at bar is not based upon diversity of citizenship, but is

founded upon a bond executed under the laws of the United States, Hartford Accident and Indemnity Company v. Baldwin, 262 F.2d 202 (8th Cir. 1958), and the rights of the parties must be determined upon federal law rather than state law, Liebman v. United States, 153 F.2d 350 (9th Cir. 1946).

■ The bond here executed is much like the bonds executed under the Miller Act.[4] The cases hold that the technical rules otherwise protecting sureties from liability have never been applied to the Miller Act bonds, Indemnity Insurance Co. v. Browning-Ferris Mach. Co., 227 F.2d 804 (5th Cir. 1955), and Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1946). By analogy the same principle is applicable to the Packers and Stockyards Act Bonds. It therefore follows that the failure of the plaintiff to bring his action against Goldsborough within the thirty day time limit of Ark.Stat. Ann. § 34–334 (Repl.1962) after demand by the surety is no defense to the present action.

■■ With respect to the contention of estoppel and laches, there is nothing in the marking of the invoices or the acceptance of Goldsborough's personal check that would work an estoppel, for Major Lewis had a right to rely upon the bond filed with the Packers and Stockyards Division of the Department of Agriculture as guaranteeing payment of the check. Nor can the Court see any change of position on the part of Merchants Clearing, Incorporated, which would result from the fact that the check was run through the second time for collection.

■ Judging from the relief asked and the reparation procedure pursued by plaintiff, he presumably asked for the allowance of an attorney's fee under 7 U.S.C.A. § 210(f). In view of the Court's ruling with respect to the inapplicability of the reparation proceeding, it follows that plaintiff is not entitled to an allowance of an attorney's fee under that

---

3. Title 7 U.S.C.A. § 203.

4. 40 U.S.C.A. § 270a.

section, and the bond section, 7 U.S.C.A. § 204, is silent with respect to the attorney's fee. However, in United States For the Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Company, 126 F.Supp. 626, 637 (W.D. Ark.1955) involving a similar situation under a Miller Act bond, Judge Miller said:

"Plaintiff contends that a penalty and attorney's fee should be assessed against the sureties under the provisions of Sec. 66–514, Ark.Stats. 1947, Annotated 1953 Supp. Defendants contend * * * that the bond involved herein was executed under a statute of the United States and should not subject the sureties to penalties and attorney's fees provided by the State statute.

"Defendants rely upon the cases of Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5, and Liebman v. United States, for Use and Benefit of California Electric Supply Co., 9 Cir., 153 F.2d 350, as sustaining their contention that the Arkansas law is inapplicable. These cases do not support the rule that Federal law governs the *construction* of Federal statutes, but in the instant case the construction of the Miller Act is not involved. The Act is silent upon the question of allowance of interest, costs, attorney's fees and penalties, and the authorities seem to be uniform in holding that in suits under the Miller Act the recovery of interest, costs and attorney's fees is governed by the state law. Illinois Surety Company v. John Davis Company, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; Aetna Casualty & Surety Co. v. B.B.B. Const. Corporation, 2 Cir., 173 F.2d 307; United States, for Use and Benefit of Lichter v. Henke Const. Co., 8 Cir., 157 F.2d 13, 24;

Continental Casualty Co. v. Clarence L. Boyd Co., 10 Cir., 140 F.2d 115; United States for Use and Benefit of Brady's Floor Covering, Inc., v. Breeden, D.C.Alaska, 110 F.Supp. 713 (holding that attorney's fee and interest were recoverable under the statutes of Alaska); United States for Use of Watsabaugh & Co., v. Seaboard Surety Co., D.C.Mont., 26 F.Supp. 681, 693, affirmed 9 Cir., 106 F.2d 355 (holding that no attorney's fee was recoverable under the Montana law)." [5]

Therefore judgment will be entered for the plaintiff in accordance with his prayer for $9,352.16, together with interest at the rate of 5% from November 17, 1961, and for an attorney's fee of $1,000.00.[6] Upon payment of this amount Merchants Clearing, Incorporated, and National Surety Corporation shall have judgment over against O. H. Goldsborough.

---

5. Ark.Stat.Ann. § 66–514 (Repl.1957) referred to in United States For the Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Company, 126 F. Supp. 626 (W.D.Ark.1955), has been repealed and re-enacted as Ark.Stat.Ann. § 66–3238 (Supp.1963).

6. Plaintiff did not ask for penalty set out in Ark.Stat.Ann. § 66–3238 (Supp. 1963).