GENERAL INSURANCE COMPANY OF AMERICA, Appellant,

v.

SCHNELL LIVESTOCK MARKET, INC., Appellee.

No. 18010.

United States Court of Appeals Eighth Circuit.

Nov. 30, 1965.

Donald R. Shultz, of Whiting, Lynn, Freiberg & Shultz, Rapid City, S. D., for appellant.

Ward M. Kirby, of Mackoff, Kellogg, Kirby & Kloster, Dickinson, N. D., for appellee. On brief with Ronald R. Johnson, Lemmon, S. D.

Before MATTHES and GIBSON, Circuit Judges, and REGAN, District Judge.

GIBSON, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of South Dakota on the applicability of a bonding agreement to a livestock transaction. Title 28 U.S.C.A. § 1352 established the original jurisdiction.[1] The District Court (jury waived) found for plaintiff.

Martin Livestock Sales, Inc. (Martin) is a corporation that was engaged in livestock auction market operations and was duly registered under the Packers and Stockyards Act of 1921, both as a market agency selling on a commission basis and as a dealer in livestock. In that connection Martin carried two bonds as required by the Act. One was a Market Agency Bond in the sum of $46,000 designed to cover transactions in which Martin received cattle to be sold on a commission basis; the other was a Dealer's Bond in the amount of $7,000 designed to cover transactions in which cattle were directly purchased by Martin.

Acting as surety under the $46,000 Market Agency Bond was appellant, General Insurance Co.; the principal, of course, was Martin. This bond was conditioned as follows:

"If the said Principal shall safely keep and faithfully and promptly account for and pay to the owners or their duly authorized agents the proceeds of sales of all livestock received for sale on a commission basis by the said Principal."

The focal point in this litigation is the applicability of the $46,000 Market Agency Bond to the facts of this case. Martin, through its disclosed agent, made two "purchases" of livestock from the yards of appellee Schnell Livestock Market, Inc. (Schnell), one on February 17, 1962, and one on February 24, 1962. Martin tendered to Schnell a sight draft for each of these transactions for a total of $24,619.10. These drafts were subsequently dishonored because of insufficient funds. Immediately after the drafts were dishonored Schnell contacted Martin, whereupon Martin indicated that it still had a few of the cattle in its possession and that as soon as thy were sold the drafts would be paid. Eventually, all of the cattle were sold to third parties but the drafts were never honored nor was payment made.

By reason of these defaults, a reparation proceeding against Martin was duly commenced by Schnell under § 210(a) of the Packers and Stockyards Act. After a hearing it was ordered that the amount due on the drafts be paid to Schnell by Martin.

---

1. "§ 1352. The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States."

Thereafter this action was commenced in the Federal District Court against Martin and General Insurance Company as surety under the Market Agency Bond, for the amount covered in the Repartion Order plus interest and attorney fees. Martin entered no appearance below and is not a party to this appeal.

There is no doubt that as between Schnell and Martin, Schnell is entitled to payment, the basic issue here being the liability of Martin's surety under the Market Agency Bond. The District Court held that Schnell was entitled to recover under the Market Agency Bond. The basis of the Court's decision was that the cattle taken by Martin and later sold to third parties were sold on a commission basis on behalf of Schnell, thus making the Market Agency Bond applicable to the transaction. In addition, the District Court held that General Insurance was estopped to set up the bond limitation of $46,000.00. Judgment was ordered in favor of Schnell for the full amount of its claim plus attorney fees. From this decision General Insurance appeals to this Court.

Appellant argues that the bond in question only covers transactions wherein the principal takes livestock on a commission basis; and, since Martin (the principal) purchased the livestock on his own behalf, the Market Agency Bond should have no application. In addition, appellant argues that even if the bond is applicable to this transaction, because of the other claims against this bond it should be free to set up the maximum liability under the bond. Appellant also objects to the admission into evidence of the Reparation Order and the allowance of attorney fees as costs.

Appellee, on the other hand contends that the findings of the trial court are not clearly erroneous. Appellee argues that payment by a draft is conditional. Since the drafts were never paid, title to the livestock never passed from Schnell to Martin. Therefore, Martin could not sell them on his own behalf but only as a commission merchant for appellee, Schnell.

The Act, 7 U.S.C.A. § 201(c) and (d) sets out the distinction between the terms "market agency" and "dealer":

"The term 'market agency' means any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis * * *."

"The term 'dealer' means any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser."

The regulations promulgated under the authority of Title 7 U.S.C.A. § 204 require that persons registered both as a "market agency" and as a "dealer" must file separate bonds to cover operations under both of these capacities. 9 C.F.R. § 201.29. It appears that Martin was so registered and had posted the two required bonds and that these bonds were accepted and approved by the Secretary. Furthermore, in examining the Market Agency Bond in question, we find that it uses the exact language required in 9 C.F.R. § 201.31(a). We therefore find that all executive demands have been met by the bond, and consequently it is not subject to judicial expansion for its failure to comply with specific legislative or administrative mandates.

Likewise, when a bond prescribed by statute is designed specifically and unambiguously to cover activities as a "market agency," this same bond shall not be judicially enlarged to cover activities conducted as a "dealer." Or, similarly stated, a sale transaction is a valid obligation only against a dealer bond, where registration has been made both as a market agency and as a dealer. Daugherty v. White, 335 F.2d 94 (10 Cir. 1964); Employer's Liability Assurance Corp. v. Lunt, 82 Ariz. 320, 313 P.2d 393 (1957); Carstensen v. Stratton, 90 Utah 19, 58 P.2d 1035 (1936).

For a disposition of this case our attention must be centered upon the clause which establishes the limits of this particular bond. It reads, "received for

sale on a commission basis." Next we must determine if Martin, at the time it received the cattle, received them as a commission merchant or as a vendee. To this proposition there is no disagreement. Martin purchased the livestock at auction from Schnell; and, Martin paid a commission to its agent on the purchases, paid all shipping charges and all expense of feeding and yardage. The Complaint of Schnell alleged that a sale had taken place. Mr. Schnell testified that, "The transaction at Schnell Livestock Market * * * was an outright sale to Martin * * * " The Department of Agriculture in its Reparations Order referred to the "purchases" in which Martin "accepted delivery and retained possession of the cattle for its own account." The trial court's decision makes reference to the transaction as a sale. From a review of the facts there can be no doubt that these conclusions are correct. At the time of the transfer the cattle were clearly not "received for sale on a commission basis" but were the product of an outright sale. Therefore, viewing the transaction from this point, the transaction clearly falls outside the terms of the Market Agency Bond.

 Appellee points out, however, that even though the trial court concluded that the cattle were not received on a commission basis, later when contacted about the default, Martin agreed to hold the cattle for Schnell. We do not believe the record supports this conclusion. In the first place Martin had disposed of a large percentage of the cattle at the time this conversation took place. Of the 178 head purchased on February 17, 1962, all but a few were sold to third parties by February 23, 1962. On the next day, February 24, 1962, 21 more head were purchased from Schnell by Martin. The draft for the first transaction had apparently not yet been dishonored because Schnell accepted without question the second draft for this second purchase. Apparently it was some time after this date when Schnell learned that the drafts had been dishonored and contacted Martin about the default. The record does not indicate the exact date, but it is clear that by this time nearly all of the cattle had been resold to third persons. Obviously, one cannot hold cattle on a commission basis when he has already sold the cattle.

Even as to the remaining cattle, there is no evidentiary foundation on which this alleged consignment agreement can be based. From the testimony of Mr. Schnell it is clear that Martin merely indicated that it would remit the amount due after disposing of the few remaining cattle. This is nothing but a promise to pay a sum certain for which Martin is absolutely liable under the terms of the original sale. It is not only consistent with, but affirmatively indicates that the parties had intended a sale and were still treating it as such. There is absolutely no indication of any agreement to act as a commission merchant or hold the cattle or proceeds for Schnell. In fact, the records of Martin indicate that when the cattle were resold they were sold for the account of "M.L.S." (Martin Livestock Sales) and not for the account of Schnell. Likewise, Schnell in its Complaint below sued for the amount of the drafts and did not claim the net proceeds of a consignment. Finally, there is absolutely no showing that a commission was agreed upon, charged, allowed or claimed (a seemingly necessary element for one to be selling on a "commission basis"). As a consequence, we believe that the finding of an agreement to hold the cattle on a commission basis is clearly erroneous.

 There is likewise no merit in appellee's claim that the failure of the drafts to be honored as a matter of law transforms this transaction into a consignment. The Court agrees that as a general rule, a sale based upon payment by a sight draft is conditional upon the draft being honored. A conditional sale, however, is still a sale and not a consignment. Even were we to accept the proposition advanced by Schnell, that Martin was a converter when he sold the cattle, we are unable to discover any doctrine of law that declares a converter analogous to a commission merchant. We cannot, therefore, hold that a failure of a sight

draft to be honored when presented transforms a vendor into a consignor, a vendee into a commission merchant, and a sale into a market agency agreement.

In conclusion, there can be no doubt that these cattle were not "received for sale on a commission basis." Martin in purchasing the cattle acted, according to the definition in the Act, as a "dealer" and not a "market agency." Nor was this obvious sale later transmuted into a "market agency" consignment. Therefore, we hold that the trial court was clearly erroneous in granting recovery under the "market agency" bond. Under provisions of Rule 52(a) Fed.R.Civ.P. this finding should be set aside.

The issues of estoppel to set up bond limits, admissibility of the Reparations Order, and award of attorney fees are rendered moot by the disposition of the above issue and need not be discussed herein.

Judgment of the District Court is reversed with direction to enter judgment in favor of appellant, General Insurance Company.