**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, Plaintiff,**

v.

**Charles J. VOLIN, individually and d/b/a Volin Cattle Company, Defendant.**

**No. 3–68–Civ–161.**

United States District Court
D. Minnesota,
Third Division.

Oct. 7, 1969.

Richard T. Malone, St. Paul, Minn., for plaintiff.

David L. Grannis, South St. Paul, Minn., for defendant.

MEMORANDUM AND ORDER

DEVITT, Chief Judge.

This is an action by a surety against its principal to recover $10,906.80 which sum the surety allegedly was obliged to pay under the terms of a surety bond.

The complaint designates the diverse citizenship of the parties as the basis for jurisdiction. Plaintiff Hartford Accident and Indemnity Company is a Connecticut corporation; defendant Charles J. Volin d/b/a Volin Cattle Company is a Minnesota citizen.

There was a brief trial to the court whereat the parties stipulated to a substantial portion of the facts and pertinent exhibits were submitted. Upon review of the evidence and law, I find that the plaintiff is not entitled to the relief which it seeks.

The bond in question was executed in compliance with a provision of the Packers and Stockyards Act, 1921, Title 7 U.S.C.A. § 181 *et seq.*, specifically § 204, whereby the Secretary of Agriculture may require reasonable bonds from livestock dealers and market agencies. By virtue of § 201.29(a), Title 9 C.F.R., such bonds are required.

Volin Cattle Company is a market agency under the Packers and Stockyards Act, and is registered to provide clearing services for other market agencies or dealers. A clearing agency agrees to pay for livestock purchases made by specified clearees in consideration of a fee frequently calculated on a per-head basis. Clearees must be named upon the bond of the market agency providing the clearing services, § 201.29(c), Title 9 C.F.R.

The particular bond underlying this dispute, upon which Volin was named as principal, designated one Robert Thompson as a registrant, that is, a clearee of Volin. It is Robert Thompson who is the true, though apparently judgment-proof, culprit. Thompson was a registered livestock dealer bonded as such by the State Surety Company. On March 1, 1967, he concluded a written agreement with Volin whereby Volin agreed "to pay for all cattle purchased by Robt. Thompson on the South Saint Paul mkt. for a charge of fifty cents per head." On March 31, 1967, Thompson's registration at the South Saint Paul, Minnesota, market was amended to show that he was a clearee registrant on the Volin Cattle Company bond. The most significant condition of that bond reads:

"Applicable if others clear through Principal

(3) If the said principal, acting as a clearing agency responsible for the financial obligations of other registrants engaged in buying livestock, *viz*:

Robert Thompson

, or if such other registrants, shall (1) pay when due to the person or persons entitled thereto the purchase price of all livestock purchased by such other registrants for their own account or for the accounts of others; and (2) safely keep and properly disburse all funds coming into the hands of such Principal or such other registrants for the purpose of paying for livestock purchased for the accounts of others." [1]

----●----

Sometime in the early Summer of 1967, Thompson journeyed to Oklahoma City where he negotiated the purchase of some $20,000 worth of cattle. Thompson

---

1. This condition or its equivalent is required by § 201.31(c), Title 9, C.F.R.

represented himself to be a registered dealer, which indeed he was, and said nothing about his relationship with Volin. It is clear that the Oklahoma City seller regarded Thompson as an independent dealer backed by personal credit and bond. Indeed, the seller checked Thompson's credit and surety standing with Thompson's local Iowa bank. The seller had no knowledge of Volin or his bond. As a result, the sale and transaction was consummated in reliance upon Thompson's credit and an effective $14,000 bond covering his business activities issued by the State Surety Company. Thompson presented a personal draft in payment. Sadly for all, the draft went unpaid. Thereupon the Oklahoma City seller sought reparation, and whether by agreement or by order of the Secretary,[2] plaintiff Hartford and the State Surety Company paid a pro rata share of the purchase price of the cattle. Hartford's share is alleged to amount to $10,906.80.[3] Recovery of that amount is sought in this action.

It is elementary that a surety has no obligation where his principal has none. *See, e. g.,* 72 C.J.S. Principal and Surety §§ 13, 91, 92; 50 Am.Jur. Suretyship § 50. Further limitations of the surety's obligation may be defined by the surety contract and by any applicable statutes. Thus, if Volin was not responsible for Thompson's Oklahoma City transaction, and I do not think that he was, then Hartford was not obliged to make any payment. Moreover, because a

principal, except in so far as he is unjustly enriched, is not indebted to his surety for payments made when no duty compelled them or when the principal did not consent, Hartford cannot recover if no duty to pay evolved upon Volin in the first instance.

By written contract, Volin agreed to clear any transaction Thompson made on the South St. Paul market. At least between the contracting parties, this limitation seems valid and binding. But Hartford maintains that its obligation as surety is defined by rules not affected by any contract its principal may make with third parties. In some degree, the cases support Hartford's contention. Thus, in Lewis v. Goldsborough, 234 F. Supp. 524 (E.D.Ark.1964), it was held that a clearing agency's liability for its clearee's purchases was not limited to purchases made on the agency's home market. The opinion in United States Fid. and Guar. Co. v. Quinn Bros. of Jackson, Inc., 384 F.2d 241 (5th Cir. 1967), is in accord on this point. However, in each of these cases, the unpaid seller dealt with its buyer as a clearee on another bond, or at the very least, each of the sellers was aware of the buyer's status as such. In those cases, the seller's reliance extended to the clearing agency, and deserved protection. In the present case, however, the seller's reliance was exclusively upon Thompson, not as a clearee, but as an independently secured dealer. So far as the seller was concerned, Volin did not exist.

2. The reason for the payment was not made clear at trial. Even if plaintiff's payment was compelled by the Secretary, Volin should not be automatically bound as he was apparently not consulted or represented at negotiations or hearing. Moreover, there is some doubt as to the Secretary's jurisdiction to order reparation in these circumstances. *See* Lewis v. Goldsborough, 234 F.Supp. 524, 528 (E.D.Ark.1964).

3. Defendant contends that even if Hartford was obligated to make some payment on its bond, Hartford's liability was secondary to that of State Surety. He urges that Hartford's liability would be limited

to so much of the loss as exceeded the amount of State Surety's $14,000 bond. This would amount to about $7,000. This court would not have jurisdiction of a seven-thousand-dollar claim under the diversity statute, 28 U.S.C.A. § 1332.

Neither the evidence or the stipulations dealt with this issue. It was not discussed in the briefs although it was urged by defendant's counsel at trial. The issue was shaped by the pleadings. It appears, therefore, that plaintiff's allegation in paragraph III of its complaint that it was "required to" pay the sum of $10,906.80, denied by the defendant's answer, has not been proved.

Due emphasis must be placed on the fact that the seller, after a diligent check, reasonably relied on Thompson's standing as a personally bonded dealer. It may be that Thompson was not entitled to act in two capacities, but even so, such a restriction does not render his independent dealer bond ineffective. The fact is that Thompson did have a good and, in the seller's eyes, sufficient bond backing his transactions as an independent dealer.

But we are directed to the most significant aspect of this case by the advice in *Quinn Bros., supra,* that it is the character of the services to be performed which describes a principal's responsibilities. 384 F.2d at 245.

Had Thompson represented himself as Volin's clearee, it may well be that Volin's responsibility would be fixed notwithstanding their contract. The *Lewis* and *Quinn* cases, *supra,* so hold. But that is not our situation. Thompson did not appear as a clearee. The seller did not regard him to be a clearee. No attempt was ever made to clear the transaction through Volin. In short, Volin did not act as a clearing agency for this transaction, nor did anyone ever purport that he would. The pertinent condition of the bond is annotated on the margin as being "Applicable if others clear through Principal." The clause itself begins: "If the said principal, *acting as a clearing agency* * * * etc." (Emphasis added.) Section 201.33(a) of Title 9, C.F.R. provides that any person injured by the principal's failure to comply with the conditions of a bond may maintain suit to recover on the bond. Volin did not fail to comply with the relevant condition, for he never acted as a clearing agency.

In General Ins. Co. of America v. Schnell Livestock Mkt., Inc., 353 F.2d 67, 69 (8th Cir. 1965), the court said:

> when a bond prescribed by statute is designed specifically and unambiguously to cover activities as a 'marketed agency,' this same bond shall not be judicially enlarged to cover activities conducted as a 'dealer.'

The coverage of a bond is a function of the activities performed. *See also,* Daugherty v. White, 335 F.2d 94 (10th Cir. 1964); Baldwin v. Hartford Acc. and Indem. Co., 168 F.Supp. 86 (D.Neb. 1958), aff'd, 262 F.2d 202 (8th Cir. 1958). I think the following paraphrase betrays no undue license: when a bond prescribed by statute is designed specifically and unambiguously to cover activities as a clearing agency, the same bond shall not be judicially enlarged to cover situations when the principal is not acting as a clearing agency.

Plaintiff Hartford, having already paid $10,906.80 as surety (in my view not an obligatory expenditure) must seek its relief, if any exists, elsewhere.

This expression is intended to comply with the requirements of Federal Rule of Civil Procedure 52, Title 28 U.S.C.A.